GLORIA LICARI ET AL. *v.* DONALD BLACKWELDER ET AL. (3968)

BORDEN, BIELUCH and O'CONNELL, Js.

Submitted on briefs November 13, 1987—decision released April 5, 1988

*Joseph M. Brophy* filed a brief for the appellants (defendants).

*Ridgely W. Brown* and *Heather M. Brown* filed a brief for the appellees (plaintiffs).

BIELUCH, J. This is an appeal by the defendants from the judgment of the trial court awarding damages to the plaintiffs for breach of the defendants' duty as real estate brokers to find a buyer for the plaintiffs' property at the best possible price, and for acting improperly in dealing for themselves to the financial loss of the plaintiffs. The defendants claim that certain of the court's factual findings were not substantiated by sufficient evidence, and that some of the court's conclusions were not only unsupported by the facts of the case, but also were irrelevant to the cause of action brought by the plaintiffs and therefore were not issues properly before the court. Our review of the transcript and record in this case reveals that the court had before it sufficient evidence on which to base its findings, and that the court's conclusions were fully supported by the facts and the law and were relevant to the issues presented. We therefore find no error.

The trial court found the following facts. The six plaintiffs[1] are brothers and sisters who inherited from their parents the family home and property in question located in Westport. The plaintiffs, whom the court found to be "unsophisticated lay people with no extensive dealings in real estate," decided to sell the property in 1978. The plaintiffs had no real knowledge as to the actual or potential value of their inherited real estate, which was located in a neighborhood of mixed residential and commercial properties at a time of changing property values. Upon the recommendation of a neighbor, the plaintiffs contacted Robert Schwartz, a Norwalk real estate broker, for guidance and assistance in the sale of their property.

[1] The plaintiffs are Gloria Licari, Antoinette Rietano, Angeline Macaluso, Jane Mobilio Douchette, Nicholas DeMaria, and Jack DeMaria.

Schwartz consulted with the real estate agency of the defendants Donald Blackwelder and Hannah Opert, Westport brokers experienced as to the marketing and values of property in the area of the plaintiffs' home. The defendants and Schwartz discussed several prospective clients generated by the defendants who might be interested in various listings held by Schwartz. The defendants and Schwartz also agreed to a "co-broke arrangement" under which they would share the real estate listings and divide the commissions evenly if one of the defendants' prospective clients purchased real estate listed by Schwartz. Thereafter, Opert asked Schwartz to secure a listing on the plaintiffs' property so that it could be shown to a prospective buyer. On October 18, 1978, Schwartz obtained an exclusive twenty-four hour right to sell the plaintiffs' real estate at a price of $125,000, and the property was immediately shown to the defendants' prospective buyer by a sales agent employed by Schwartz.

Within the twenty-four hour listing period obtained by Schwartz, the defendants made their own offer of $115,000 for the plaintiffs' property, which was accepted by the plaintiffs. The defendants did not negotiate on behalf of or for the plaintiffs with the potential buyer secured by them, and did not allow for a reasonable period of time to expire for such negotiations before they made their own personal offer. The defendants also did not disclose to the plaintiffs their understanding of the potential value that the plaintiffs' property might have to other buyers. The plaintiffs, therefore, believed that they had sold their property at its true market value. On December 29, 1978, the plaintiffs transferred title to the premises to the defendants upon payment of $115,000 as follows: cash in the amount of $11,500 and a purchase money mortgage[2] in the amount of $103,500 from the purchasers.

---

[2] "A purchase money mortgage is 'one taken back by the seller for part of the purchase money.' R. Kratovil & R. Werner, Modern Mortgage Law

The plaintiffs were led to believe that the defendants would occupy and use the property. The defendants neither took possession nor contracted for any improvements to the property. Instead, immediately upon signing the contract to buy the plaintiffs' property for $115,000, the defendant Opert contracted on behalf of her partnership to sell the home to another buyer for the price of $160,000. This potential buyer, a neighbor of the plaintiffs, was previously known by them to be interested in the property, but the plaintiffs had instructed Schwartz not to contact him. Title from the defendants passed to this buyer on January 4, 1979, six days after its purchase from the plaintiffs, for $160,000, a gain to the defendants of $45,000 on their cash investment of $11,500. Their purchase money mortgage held by the plaintiffs for six days was paid and released at the second title transfer.

The plaintiffs' revised complaint in two counts claimed first, that the defendants breached their duty to the plaintiffs by withholding from them information of other negotiations with potential buyers for the purchase of the plaintiffs' property at a higher price, and second, that the defendants intentionally misrepresented the identities of the serious prospective buyers in order to mislead the plaintiffs into selling the property to the defendants at a lower price.

The court, from the testimony and exhibits offered during the trial, found that "the more credible and weightier evidence support[ed] an ultimate fact conclusion that the defendants were obligated to act on behalf of the best interest of the plaintiffs." This obligation, the court concluded, "imposed upon the defendants the duty to find a buyer for the property at the best price to the plaintiffs based upon the defendants' knowledge,

and Practice (2d Ed. 1981) § 19.01." *State* v. *Champagne,* 206 Conn. 421, 423 n.4, 538 A.2d 193 (1988).

advice and information concerning all material facts affecting the property in question." The court also found that the defendants not only breached a duty they owed to their own prospective client, but that "they also acted incorrectly in dealing for themselves at the expense of the plaintiffs." The defendants' obligation to the plaintiffs, the court held, was the result of the defendants' relationship with Schwartz, the listing broker with whom they had an agreement "to split Mr. Schwartz's commission on the sale to the defendants." Although it found that the plaintiffs had not proven any actual fraud, the court did find that the defendants' failure to use "reasonable efforts on behalf of the plaintiffs," and their own personal offer without disclosure of material facts affecting the plaintiffs' property rendered the defendants' "clear profit" of $45,000 "unconscionable."

The defendants appeal from the judgment rendered in favor of the plaintiffs awarding $45,000 plus legal interest from January 4, 1979, with taxable costs.

The defendants' claims on appeal begin with an argument that the evidence presented during the trial was insufficient to substantiate several of the court's factual findings. Specifically, the defendants claim that the court erred in finding (1) that the plaintiffs were unsophisticated lay people with no extensive dealings in real estate, (2) that the plaintiffs had no real knowledge as to actual or potential value of their inherited real estate, (3) that Schwartz consulted with the defendants as to marketing and prices of properties in the neighborhood of the plaintiffs' property in order to determine the suggested listing price of $125,000, (4) that the defendants asked Schwartz to show the plaintiffs' property to one of their prospective clients, (5) that the defendants made their own personal offer before allowing a reasonable period of time to expire for negotiations to take place between prospective buyers and the

plaintiffs, (6) that the defendants did not disclose to the plaintiffs their understanding of the potential value that the plaintiffs' property might have to others in the neighborhood, (7) that the defendants led the plaintiffs to believe that they would occupy and use the property, and (8) that the defendant Opert, on signing the contract to buy the plaintiffs' property for $115,000, immediately contracted for its sale to the ultimate buyer at a price of $160,000.

The defendants argue that none of these factual findings was supported by sufficient evidence, and that some of the court's conclusions were irrelevant to the issues presented to the trial court. Regardless of how these claims of error are presented, they are merely attacks on the factual findings of the trial court. The defendants are asking this court to retry the case. We cannot.

"Our review of the trial court's factual findings is limited solely to the determination of whether they are supported by the evidence or whether, in light of the evidence and pleadings in the whole record, they are clearly erroneous. Practice Book § 4061; *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Fortier* v. *Laviero,* 10 Conn. App. 181, 183, 522 A.2d 313 (1987); *Cook* v. *Nye,* 9 Conn. App. 221, 224, 518 A.2d 77 (1986). The function of an appellate court is to review, and not retry, the proceedings of the trial court. ' "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975) . . . . ' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 220; *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987); *Cook* v. *Nye,* supra." *Petti* v. *Balance Rock Associates,* 12 Conn. App. 353, 357, 530 A.2d 1083 (1987).

It is not within the power of this court to find facts or draw conclusions from primary facts found by the trial court. As an appellate court, we review the trial court's factual findings to ensure that they could have been found "legally, logically and reasonably." *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 678, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984). Our review of the record discloses ample support for the court's factual findings. There is no merit to the defendants' claim to the contrary.

The defendants also challenge the court's conclusion that, through their relationship with the plaintiffs' broker, Schwartz, the defendants had certain obligations toward the plaintiffs. The defendants argue that by defining the scope of the defendants' duty towards the plaintiffs, the court went beyond the specific allegations contained in the plaintiffs' complaint. We find no merit in the defendants' challenge to this aspect of the judgment of the trial court.

To the extent that the defendants' claims rest on grounds of evidentiary insufficiency, we restate the common refrain as to our role as an appellate court. An appellate court is limited in its review of factual findings to a determination of whether such facts are supported by the evidence, or whether, in light of the evidence presented and the whole record, they are clearly erroneous. Practice Book § 4061; *Petti* v. *Balance Rock Associates,* supra.

The court's finding that the defendants had an obligation to the plaintiffs through the relationship the defendants had with Schwartz is also subject to this standard of review. Whether the defendants were agents of the plaintiffs is a question of fact. *Cohen* v. *Meola,* 184 Conn. 218, 220, 439 A.2d 966 (1981); *Teris* v. *Shearson Hayden Stone, Inc.,* 5 Conn. App. 691, 693,

501 A.2d 1228 (1985). In addition, "[t]he relation need not arise from an express appointment and an acceptance, but is often established from the words and conduct of the parties and the circumstances of the particular case." *Kurtz* v. *Farrington,* 104 Conn. 257, 269, 132 A. 540 (1926). See also *Alaimo* v. *Royer,* 188 Conn. 36, 41, 448 A.2d 207 (1982). The trial court's finding that the defendants were obligated to the plaintiffs through the defendants' relationship with Schwartz was not in error.

The defendants also maintain that the court erred in its findings as to the manner in which they breached their duty to the plaintiffs. Specifically, the defendants argue that because the grounds for the plaintiffs' complaint were limited to allegations that the defendants breached a duty to disclose prior negotiations and offers on the plaintiffs' property, and that the defendants had misrepresented the identities of other potential buyers in order to induce the plaintiffs to sell to them, the court's findings went beyond these specific allegations. We do not agree.

The facts found by the court were sufficient to support its conclusion that the defendants had breached a duty owed to the plaintiffs, and that they had intentionally misrepresented certain facts to induce the plaintiffs to sell their property to them. Once the court had made these requisite threshold findings of fact, the law of this state and general principles of law support its conclusions based on these findings, contrary to the assertion of the defendants.

A real estate broker is a fiduciary. *Kurtz* v. *Farrington,* supra. As such, he is required to exercise fidelity and good faith, and "cannot put himself in a position antagonistic to his principal's interest"; *Ritch* v. *Robertson,* 93 Conn. 459, 463, 106 A. 509 (1919); by fraudulent conduct, acting adversely to his client's interests,

or by failing to communicate information he may possess or acquire which is or may be material to his principal's advantage. A real estate broker acting as a subagent with the express permission of another broker who has the listing of the property to be sold is under the same duty as the primary broker to act in the utmost good faith. *Robertson* v. *Chapman,* 152 U.S. 673, 14 S. Ct. 741, 38 L. Ed. 592 (1893); see 12 Am. Jur. 2d 837–38, Brokers § 84.

This rule requiring a broker, or his subagent, to act with the utmost good faith towards his principal places him under a legal obligation to make a full, fair and prompt disclosure to his employer of all facts within his knowledge which are, or may be material to the matter in connection with which he is employed, which might affect his principal's rights and interests, or his action in relation to the subject matter of the employment, or which in any way pertains to the discharge of the agency which the broker has undertaken. Upon hearing that a more advantageous sale or exchange can be made, the facts concerning which are unknown to the principal, the broker has the duty to communicate these facts to the principal before making the sale. A failure to do so renders the broker liable to the principal for whatever loss the latter may suffer as a consequence thereof and precludes recovery of a commission for his services. 12 Am. Jur. 2d 842, Brokers § 89.

Our state has codified these principles of law in its real estate licensing law; General Statutes §§ 20-311 through 20-329bb; and in the regulations it has promulgated concerning the conduct of real estate brokers and salespersons. Regs., Conn. State Agencies §§ 20-328-1 through 20-328-18. Section 20-320 of the General Statutes provides for the suspension or revocation of a real estate license, as well as the levy of a fine, where a broker or salesperson has violated the code of conduct generally set out in the statute. Included in the pro-

scribed conduct are the following: "(1) Making any material misrepresentation; (2) making any false promise of a character likely to influence, persuade or induce; (3) acting for more than one party in a transaction without the knowledge of all parties for whom he acts . . . [and] (11) any act or conduct which constitutes dishonest, fraudulent or improper dealings."

The trial court did not err in finding that the essential claims of breach of duty and intentional misrepresentation set out in the plaintiffs' complaint were proven by the facts presented, nor in finding that the conduct of the defendants entitled the plaintiffs to an award of damages. The defendants' conduct fell within the proscriptions of the general principles of law regarding the fiduciary relationship of a broker to his principal, as well as of the code of conduct required by the law of this state in General Statutes § 20-320.

There is no error.

In this opinion the other judges concurred.