## REGINA LEMBO *v.* RICHARD M. SCHLESINGER ET AL.
## (5592)

DUPONT, C. J., BIELUCH and FOTI, Js.

Argued January 14—decision released July 12, 1988

*Mark F. Katz,* for the appellants (defendants).
*W. James Cousins,* for the appellee (plaintiff).

BIELUCH, J. The plaintiff brought this action to recover a deposit given to the defendants toward the purchase of a condominium unit. The defendants appeal from the judgment in favor of the plaintiff. They claim

that certain factual findings of the court are contrary to the evidence, and assert that the court's conclusion that the plaintiff was entitled to the return of her $2500 deposit plus interest and to a recovery of punitive damages and attorney's fees pursuant to the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes §§ 42-110a through 42-110q; is contrary to the evidence and the law. We find error in part.

The following facts are relevant to this appeal. On June 26, 1983, the plaintiff entered into a nonbinding reservation agreement with the defendant Mark David Associates, a general partnership, for the purchase of a condominium unit in the Balance Rock Condominium in Seymour. Mark David Associates was the declarant and owner of the condominium, and, as such, was its developer and seller. Richard M. Schlesinger, the named defendant, is a partner in Mark David Associates.

The plaintiff deposited $500 with Mark David Associates pursuant to the nonbinding agreement. On or about August 19, 1983, the defendants sent to the plaintiff's attorney a proposed agreement for the sale and purchase of a condominium unit. This agreement had not been signed by the defendants. The plaintiff's attorney attached a rider to the proposed agreement which changed some terms, and sent these back to the defendants as a counteroffer on August 23, 1983, with a further deposit of $2000. The plaintiff's attorney delivered the counteroffer to the defendants' office at the address given in the original proposed purchase agreement.

Neither the plaintiff nor her attorney received an acceptance of the counteroffer from the defendants despite numerous inquiries by the plaintiff's attorney in September and October, 1983. On November 3, 1983, more than ten weeks after the counteroffer was delivered to the defendants, the plaintiff elected to rescind her counteroffer. A certified letter, return receipt

requested, was sent by the plaintiff's attorney to the defendant Mark David Associates on November 3, 1983, advising of the plaintiff's withdrawal of her counteroffer because of the defendants' failure to return an executed contract. The letter also demanded the return of the plaintiff's deposit of $2500. On November 10, 1983, the plaintiff wrote a letter to the defendants confirming her decision to cancel the purchase agreement.

The defendant Mark David Associates responded by letter dated November 11, 1983, in which it refused to return the plaintiff's downpayment, claiming that the delay in returning an executed contract was due to changes it was making in the sales contract in order to qualify for federal housing authority financing. No executed contract was enclosed with that reply. On November 16, 1983, again by certified letter, return receipt requested, the plaintiff's attorney demanded the return of the deposit, and repeated the decision to rescind the counteroffer.

On November 28, 1983, fourteen weeks after the plaintiff first delivered her counteroffer to the defendants, and after she had notified the defendants on three occasions of her rescission, the plaintiff's attorney received a letter from the defendant Schlesinger in which he refused to cancel the contract. Enclosed with this letter was a photocopy of a purchase agreement that did not include the rider proposed by the plaintiff, and which was purportedly signed and dated by Schlesinger on October 27, 1983, seven days prior to the plaintiff's November 3, 1983 decision to rescind her counteroffer. No signed contract containing the plaintiff's proposed changes was ever delivered to the plaintiff by any of the defendants.

After further efforts to obtain her deposit proved unsuccessful, the plaintiff commenced this action. The

plaintiff filed a two count complaint against the defendants, seeking, inter alia, the return of her deposit, monetary damages, punitive damages, and attorney's fees pursuant to General Statutes § 42-110g (a) of CUTPA.

This matter was referred to an attorney trial referee; General Statutes § 52-434; who found that the plaintiff was entitled to her $2500 deposit plus interest from November 10, 1983, one week after she withdrew her counteroffer. The referee specifically found that the defendants never signed the counteroffer, nor did they return anything to the plaintiff before November 27, 1983,[1] when the proposed purchase agreement was returned without the rider attached. The referee also found that the plaintiff was entitled to punitive damages and attorney's fees pursuant to CUTPA. The referee held that the defendants, by refusing to return the plaintiff's deposit, were acting unfairly and, by executing a purported contract after the plaintiff had effectively withdrawn her counteroffer, were acting deceptively.

The referee concluded that the plaintiff was entitled to the return of her $2500 deposit plus interest, punitive damages of $2500, and attorney's fees in the amount of $2500, for a total of $7500 plus interest on the plaintiff's deposit. Judgment was rendered by the trial court in accordance with the referee's report, and this appeal followed.

The defendants' first claim is that the court erred in finding that they never effectively accepted the plaintiff's counteroffer. " 'Our review of the trial court's factual findings is limited solely to the determination of

---

[1] The attorney trial referee found that the purchase agreement was returned to the plaintiff on November 27, 1983. Our review of the record indicates that the date of actual receipt by the plaintiff was November 28, 1983.

whether they are supported by the evidence or whether, in light of the evidence and pleadings in the whole record, they are clearly erroneous. Practice Book § 4061; *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Fortier* v. *Laviero,* 10 Conn. App. 181, 183, 522 A.2d 313 (1987); *Cook* v. *Nye,* 9 Conn. App. 221, 224, 518 A.2d 77 (1986). The function of an appellate court is to review, and not retry, the proceedings of the trial court.'. . . *Petti* v. *Balance Rock Associates,* 12 Conn. App. 353, 357, 530 A.2d 1083 (1987)." *Licari* v. *Blackwelder,* 14 Conn. App. 46, 51, 539 A.2d 609 (1988).

"It is not within the power of this court to find facts or draw conclusions from primary facts found by the trial court. As an appellate court, we review the trial court's factual findings to ensure that they could have been found 'legally, logically and reasonably.' *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 678, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984)." *Licari* v. *Blackwelder,* supra, 52. After a thorough review of the record and in light of the " 'basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties' "; *Lyon* v. *Adgraphics, Inc.,* 14 Conn. App. 252, 254, 540 A.2d 398 (1988); we find ample support for the court's findings and conclusions.

The defendants also challenge on two grounds the court's award of punitive damages and attorney's fees to the plaintiff pursuant to CUTPA. There is merit to the second claim of error raised by the defendants.

The defendants first attack the award on grounds of evidentiary insufficiency. We have completely reviewed the record in this regard and, under the same standard of review as set out above, we find no merit to this evidentiary claim. See *Licari* v. *Blackwelder,* supra.

The defendants next maintain that the court erred in making a CUTPA award where the plaintiff did not show a nexus between the defendants' conduct and the public welfare, as was required prior to a 1984 amendment to CUTPA. We agree.

The defendants' unfair and deceptive acts occurred in 1983. At that time, it was necessary for a plaintiff to demonstrate a nexus with the public interest as a prerequisite to recovery under CUTPA. *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 536–37, 461 A.2d 1369 (1983). The public interest requirement of a private action under CUTPA was eliminated by the legislature by a 1984 amendment to the statute. See Public Acts 1984, No. 84-468, §§ 2, 4 (effective June 8, 1984); General Statutes §§ 42-110g, 42-110m.

The trial court, citing *Wilson* v. *Firemen's Fund Ins. Co.*, 40 Conn. Sup. 336, 337–40, 499 A.2d 81 (1985), held that the amendment eliminating the public interest requirement could be retroactively applied. We disagree and we reaffirm recent decisions of this court which have held otherwise. See *Rotophone, Inc.* v. *Danbury Hospital*, 13 Conn. App. 230, 233, 535 A.2d 830 (1988); *Fortini* v. *New England Log Homes, Inc.*, 4 Conn. App. 132, 137 n.1, 492 A.2d 545, cert. dismissed, 197 Conn. 801, 495 A.2d 280 (1985). The trial court erred in awarding the plaintiff recovery under CUTPA where she failed to "demonstrate some nexus with the public interest." *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, supra, 537.

The plaintiff, presenting an alternate ground for affirming the decision of the trial court; Practice Book § 4013 (a) (1); claims that the court's award of attorney's fees may stand as punitive damages for the defendants' intentional conversion of the plaintiff's money. This claim is unavailing. The court below did not find that

the defendants had appropriated the plaintiff's $2500 deposit to their own use. Our review of the record confirms this conclusion.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover damages of $2500, with interest from November 10, 1983.

In this opinion the other judges concurred.