[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKETHE SECOND AMENDED COMPLAINT
This action arises out of a dispute regarding the termination of employment of the plaintiff, Jill-Karen Redding, by the defendant, Liberty Bank ("Bank"). The plaintiff filed a five-count second amended complaint against the Bank on December 2, 1994. The Bank has moved to strike counts two through five of the complaint. Subsequently, the plaintiff voluntarily withdrew count four of the complaint.
The plaintiff's second amended complaint makes the following allegations. On June 4, 1986, the Bank employed the plaintiff as a "Teller Trainee" and, on September 8, 1986, the CT Page 5486 plaintiff, having successfully completed the Bank's probationary period and having undergone a ninety (90) day review, was transferred to a full-time CSR I/Teller position. Thereafter, in January, 1991, the Bank published a personnel handbook which included corporate policies and procedures regarding its employees such as the plaintiff. The plaintiff received and reviewed a copy of the handbook. The policies and procedures contained in the handbook underscore that the Bank's employees would receive fair and equitable treatment when the Bank made any decisions regarding termination of employment. Additionally, the handbook states that the Bank reserves the right to respond to specific situations in whatever manner believed best suits the needs of the Bank and the employee involved. The handbook further states that the Bank will recognize a writing as a "contract of employment" if it is signed by an officer of the Bank.
On January 23, 1991, the plaintiff filed a workers' compensation claim, complaining of pain in her right wrist. Linda Lapierre ("Lapierre"), the manager of the Colchester branch of the Bank, and Peter Firla ("Firla"), the personnel director of the Bank, personally monitored the plaintiff's medical condition relative to her workers' compensation claim.
On May 20, 1991, the plaintiff was placed on thirty days probation. The "employment agreement" concerning the plaintiff's continued employment with the Bank provided in part:
 a) During the probation period you will be expected to bring your performance back to an acceptable level in terms of customer service;
 b) to be a contributing member of our staff in Colchester;
c) to cease all negative behavior; and
 d) If at the end of the thirty day period you are not deemed to be at a satisfactory level, you will be subject to further disciplinary action including termination.
Further, this written document concerning the terms of the plaintiff's continued employment stated: "We also reserve the CT Page 5487 right to terminate your employment with Liberty Bank for cause
at any time." (Emphasis provided.) This employment document was signed by Lapierre.
During and following the probation period, the plaintiff performed her job with the Bank in a competent manner. On or about June 7, 1991, Lapierre discussed the plaintiff's performance with Lorraine Marshall, an employee, agent, servant and/or representative of the Bank, and they both observed that the plaintiff's behavior was "Satisfactory," which observation was documented in the plaintiff's personnel file. During the probation period, Lapierre scrutinized closely the plaintiff's actions and unfairly reprimanded the plaintiff concerning a "sign posting" incident that occurred on or about June 17, 1991, claiming that the plaintiff violated company policy. The plaintiff suffered emotional upset and mental anguish resulting from Lapierre's acts.
Between January and August of 1991, Lapierre and Firla, on behalf of the Bank, monitored closely the plaintiff's medical status relating to her workers' compensation claim. On various occasions, as documented in the plaintiff's personnel file, Lapierre and Firla contested the plaintiff's request for modified assignments that would accommodate and not aggravate her medical condition. On or about July 19, 1991, the Bank, through its authorized representative, formally contested the plaintiff's application for workers' compensation benefits. Between May 20, 1991, the date on which the plaintiff was placed on probation, and August 6, 1991, the Bank entered no adverse comments concerning the plaintiff's work performance in the plaintiff's personnel file.
On or about August 1, 1991, the plaintiff informed Lapierre that her current and/or scheduled job assignments caused her to experience physical pain. The plaintiff's job assignment was not modified to relieve her physical pain. On August 6, 1991, Lapierre sent another inter-office memoranda to Firla regarding "Jill-Karen Redding Doctor's Update." Lapierre noted "Dr. Cambridge stated that clinically Jill has carpal tunnel syndrome" and "Jill can only work 40 hours a week and can not work drive-up." On August 7, 1991, Lapierre notified the plaintiff that she was terminated.
A Bank form entitled "Termination Data" and dated August CT Page 5488 7, 1991, described the basis for the plaintiff's termination in the following manner: "Documentation of poor performance is on file in Human Resources." On August 7, 1991, the Bank created a second form entitled "Termination Data" and supplemented the basis for the plaintiff's termination by noting "Jill-Karen Redding's interpersonal skills have had a negative impact on Liberty Bank and the entire Colchester staff for over a six month period. Her work skills have been unsatisfactory. Since there was no improvement in these areas it was necessary to terminate the plaintiff's employment with Liberty Bank."
Count one of the plaintiff's second amended complaint alleges that the Bank wrongfully discharged the plaintiff from employment, in violation of General Statutes § 21-290(a),[1] as a result of her filing a claim for workers' compensation benefits. Count two purports to set forth a common law breach of contract claim. Count three alleges that the Bank's actions in discharging the plaintiff from employment constituted a "tortious breach of its express and implied contract and a breach of the Bank's implied covenant of good faith and fair dealing with [the plaintiff]." Count four alleges that the Bank's actions in terminating the plaintiff from employment constituted a breach of the Bank's implied covenant of good faith and fair dealing with the plaintiff, which contravenes public policy. Finally, count five purports to set forth a claim for intentional infliction of emotional distress.
In its motion to strike counts two through five of the plaintiff's second amended complaint, the Bank argues that count two does not contain sufficient allegations to support a claim of breach of contract, counts three, four and five are merely repetitive of counts one and two and count five does not contain sufficient allegations to sustain a claim for intentional infliction of emotional distress. Count four has been withdrawn by the plaintiff.
Pursuant to Practice Book § 152, a motion to strike may be brought to test the legal sufficiency of a complaint or any of its counts. See Pratt v. Old Saybrook, 225 Conn. 177, 185
(1993). In ruling on a motion to strike, the trial court may consider only those grounds raised in the motion. Blancato v.Feldspar, 203 Conn. 34, 44 (1987). Additionally, the court must construe the facts alleged in the complaint in the light CT Page 5489 most favorable to the plaintiff. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 215 (1992). This includes the facts necessarily implied and fairly provable under the allegations but does not include, however, the legal conclusions or opinions stated in the complaint. WestportBank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490,495 (1992). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." (Citations omitted.) Bouchard v. People'sBank, 219 Conn. 465, 471 (1991).
I. Breach of Express or Implied Contract
The Bank argues that count two of the plaintiff's second amended complaint should be stricken on the ground that, although Connecticut now recognizes that representations of termination policies by an employer in an employment manual may alter the status of an at-will employment agreement, the plaintiff has failed to specifically allege the existence of either an express or implied contract. That is, the defendant argues that the plaintiff has failed to allege the formation of an employment contract established by mutual assent. In response, the plaintiff argues that, when construed in the light most favorable to her, count two is sufficiently specific to put the Bank on notice that her purpose is to allege an action in breach of contract based upon the Bank's employee manual and the May 20, 1991, writing.
Under Connecticut law, contracts of permanent employment and employment contracts for an indefinite duration are terminable at the will of either party. Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 474 (1980). Thus, unless an employee has a contract for a specified term, such employee, who is deemed to be an "at-will" employee, may generally be terminated at any time without cause. Morris v.Hartford Courant Co., 200 Conn. 676, 677 (1986). In the present case, the plaintiff's second amended complaint does not allege that she had an employment relationship with the defendant for a specified term. Accordingly, the court may infer that the plaintiff and the defendant had an employment at-will relationship. Id. (where complaint fails to allege an employment contract for a specified term, court may infer that plaintiff-employee and defendant-employer had employment at-will relationship). CT Page 5490
Exceptions have been made to the general rule regarding the termination of at-will employees, where the courts have found implied employment contracts terminable for cause.Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 116-19
(1988). For example, "under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee." Carbone v.Atlantic Richfield Co., 204 Conn. 460, 471 (1987). With respect to this issue, however, the Supreme Court has stated that: "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals." Finley v. Aetna Life Casualty Co., 202 Conn. 190,199 n. 5 (1987). "[I]n the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." (Citations omitted.) Carbone v. Atlantic Richfield Co., supra, 204 Conn. 471-72.
In order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. Lembo v. Schlesinger, 15 Conn. App. 150, 154 (1988). The burden rests on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract.Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co.,159 Conn. 242, 246 (1970). A contract implied in fact, like an express contract, depends on actual agreement. Coelho v.Posi-Seal International, Inc., supra, 208 Conn. 111. Thus, in order to set forth a claim for breach of implied contract, a plaintiff must allege that the defendant "agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment" to the plaintiff. (Citations omitted; internal quotation marks omitted.) Id., 112.
In the present case, the "words, action or conduct" alleged by the plaintiff in her complaint to establish her claim for breach of contract are: (1) the publication and distribution of a personnel handbook containing policies and procedures regarding employees like the plaintiff, in which the Bank states that it will "recognize a writing as a `contract of employment' if it is signed by an officer of the Bank," and (2) the existence of such a writing, dated May 20, CT Page 5491 1991, regarding the terms of the plaintiff's continued employment with the defendant and providing that the Bank reserved the right to terminate the plaintiff's employment "for cause" at any time.
The plaintiff alleges that the personnel handbook and May 20, 1991 writing "modified" her "`at-will' employment status with the Bank" and that "[t]he May 20, 1991 document created an employment contract between [her] and the Bank for which [she] could only be discharged `for cause.'" Additionally, the plaintiff alleges that "[t]he Bank has wrongfully breached said contract by terminating [her] without cause" and that "[a]s a direct and proximate result of the Bank's breach of its agreement" she suffered damages.
The plaintiff's allegations are sufficient to set forth a breach of contract claim. At a later date, after the submission of relevant documents by the parties, the court may find that the Bank's personnel handbook itself contains a disclaimer or that the May 20, 1991 writing applied only to the plaintiff's probation period. At this stage, however, the allegations of count two, read in the light most favorable to the plaintiff, sufficiently set forth a breach of contract claim capable of withstanding a motion to strike.
Accordingly, the Bank's motion to strike count two of the plaintiff's second amended complaint is denied.
II. Breach of Implied Covenant of Good Faith Fair Dealing
The Bank argues that count three of the plaintiff's second amended complaint should be stricken on the ground that the existence of a covenant of good faith and fair dealing depends upon the existence of a contract and, for the reasons set forth above, no contract exists between the parties. In response, the plaintiff argues that count two does sufficiently allege the existence of a contract and, because every contract carries with it an implied covenant of good faith and fair dealing, count three is legally sufficient as well.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238 (1992). CT Page 5492 Bad faith, in general, implies a neglect or refusal to fulfill some duty or some contractual obligation prompted by some interested or sinister motive rather than by an honest mistake. Id., 237.
An implied covenant of good faith and fair dealing is "[e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Citations omitted.) Magnanv. Anaconda Industries, Inc., 193 Conn. 558, 567 (1984).
In the present case, the plaintiff has alleged in her complaint that she had an employment contract with the Bank by which she could be terminated only for cause. Additionally, the plaintiff has alleged that the Bank maliciously, and with the wrongful intent of injuring her, terminated her in violation of their employment agreement, thereby breaching its implied covenant of good faith and fair dealing. The court may reasonably infer from these allegations that the plaintiff's injuries and losses were caused by a reckless indifference to her contractual rights on the part of the defendant.
The Supreme Court has held that an at-will employee cannot maintain a cause of action in contract for breach of an implied covenant of good faith and fair dealing based wholly upon a discharge without just cause. Magnan v. AnacondaIndustries, Inc., supra, 193 Conn. 568-72. Rather, such an employee must show that the discharge "involves an impropriety which contravenes some important public policy" in order to challenge a dismissal based on an implied covenant of good faith and fair dealing. Carbone v. Atlantic Richfield Co.,
supra, 204 Conn. 470-71. For the reasons stated above, however, the court finds that the plaintiff has sufficiently alleged a breach of the implied covenant of good faith and fair dealing for purposes of this motion to strike and the plaintiff need not, at this stage, allege a violation of public policy in order to withstand the motion to strike.
Accordingly, the Bank's motion to strike count three of the plaintiff's second amended complaint is denied. CT Page 5493
III. Intentional Infliction of Emotional Distress
The Bank argues that the fifth count of the plaintiff's second amended complaint should be stricken because the plaintiff has failed to allege facts in connection with the plaintiff's discharge from employment which constitute extreme and outrageous conduct. That is, the Bank argues that the plaintiff has failed to allege that she was discharged in a "manner" which caused emotional distress. In response, the plaintiff argues that in the present case the extreme and outrageous conduct of the Bank was not the discharge itself, but rather its continual refusal to reschedule the plaintiff's job assignments in light of her medical condition prior to the date of her termination from her employment. Further, the plaintiff argues that whether or not the conduct alleged is extreme and outrageous constitutes a question of fact.
Connecticut recognizes a cause of action for intentional infliction of emotional distress if the following four elements are established: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253
(1986).
The rule which seems to have emerged under this cause of action is that "there is liability for conduct exceeding allbounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis in original; citation omitted; internal quotation marks omitted.) Id., 254 n. 5. The Restatement puts it as follows:
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
CT Page 5494
1 Restatement (Second), Torts § 46, comment (d), quoted inMellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20 (1991, Berdon, J.).
"Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . [the second] element is a question, in the first instance, for th[e] court. Only where reasonable minds can differ does it become an issue for the jury." Emanuele v. Boccaccio Susanin, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 379367 (April 10, 1992, Miano, J.); Mellaly v. Eastman Kodak Co., supra, 42 Conn. Sup. 18.
In the present case, the plaintiff alleges in her complaint that, after filing a workers' compensation claim complaining of pain in her right wrist, she specifically informed the Bank that her scheduled job assignment caused her to experience pain. Despite having knowledge of her pain and medical condition, however, the Bank refused to modify her job assignment to relieve her physical pain. Additionally, the plaintiff alleges that, despite her requests on various occasions for assignments that would not aggravate her medical condition and cause her pain, the Bank failed to accommodate her condition by refusing to honor such requests for modified assignments. Further, the plaintiff alleges that, by way of the foregoing extreme and outrageous conduct, the Bank intended to inflict emotional distress on the plaintiff or knew or should have known that emotional distress was a likely result of its conduct. Finally, the plaintiff alleges that she suffered and continues to suffer severe emotional distress and that the Bank's conduct was the proximate cause thereof.
In light of the foregoing, the court cannot find, as a matter of law, that the plaintiff has failed to set forth a legally sufficient claim of intentional infliction of emotional distress. Although the plaintiff's allegations may not arise to the level of extreme and outrageous conduct required, this is a question of fact for the trier.Szczepanik v. Northeast Utilities Service Co., 1 CSCR 629, 630
(August 11, 1986, Arena, J.). See also Brown v. Ellis,40 Conn. Sup. 165, 167-68 (1984, McDonald, J.) ("whether an actor's conduct is sufficiently extreme and outrageous to impose liability is one for the jury to decide"). Reasonable minds could differ regarding the issue of whether the CT Page 5495 allegations set forth above, if true, rise to the level of "extreme and outrageous" conduct contemplated by either the Restatement or Connecticut caselaw. Cf. Petyan v. Ellis,
supra (conduct held not extreme and outrageous, where former employer stated to the unemployment compensation division that the plaintiff was fired for unsatisfactory performance, fraud and lying), with Mellaly v. Eastman Kodak Co., supra (conduct did reach such level of outrageousness, requiring issue to go to trier of fact, where plaintiff's supervisor, inter alia, allegedly taunted and harassed the plaintiff about his alcoholism and recovery, urged the plaintiff to handle his alcohol and go get drunk, indiscriminately yelled and screamed at the plaintiff regarding his recovery from alcoholism and frequently threatened the plaintiff with the loss of his job);Settembri v. American Radio Relay League, 7 CSCR 483, 485
(March 27, 1992, Schaller, J.) (question of fact regarding outrageousness of defendant's conduct found where plaintiff alleged that: while he was totally disabled, defendant commanded him to return to work or face termination; defendant was aware of his disability; and defendant terminated plaintiff's employment when defendant knew that such termination would result in emotional harm to plaintiff).
Accordingly, the Bank's motion to strike count five of the plaintiff's second amended complaint is denied on this ground.
Additionally, the Bank argues that the plaintiff's fifth count should be stricken because, where an employee claims that an intentional tort occurred during the course of the employee's employment and arose from the employee's job schedule and job assignments, the employee's exclusive remedy is the Workers' Compensation Act, C.G.S. § 31-284. In this regard, the Bank points out that the plaintiff has merely alleged that the Bank's supervisors contested her request for modified assignments that would accommodate and not aggravate her medical condition and the plaintiff has not alleged that these supervisors acted with the conscious purpose of causing her emotional distress. In response, the plaintiff argues that a claim that an injured employee has elected workers' compensation as an exclusive remedy should be raised by a special defense, rather than a motion to dismiss or a motion to strike. Moreover, according to the plaintiff, whether an individual possessed the requisite intent under a claim constitutes a question of fact where, as here, a plaintiff CT Page 5496 alleges enough facts to raise an issue of fact that the Bank's conduct was substantially certain to result in injury.
In Grant v. Bassman, 221 Conn. 465, 472-73 (1992), the Supreme Court held that a claim that an injured employee has elected workers' compensation as an exclusive remedy should be raised by a special defense, rather than a motion to dismiss. Thereafter, "several [Superior Court] cases . . . extended theGrant rationale to motions to strike." Venturi v. BackusHospital, Superior Court, judicial district of New London at New London, Docket No. 523510 (July 1, 1993, Hendel, J.); see also Cecere v. LaBonne's Epicure, Inc., 8 Conn. L. Rptr. 465, 465 (March 11, 1993, Wagner, J.); Werge v. SNET, Superior Court, judicial district of New London at New London, Docket No. 527516 (May 23, 1994, Leuba, J.).
A motion to strike tests the legal sufficiency of a pleading; but, here, the defendant has moved beyond a challenge to the legal sufficiency of count five. The defendant is actually challenging the allegations in count five on the ground that such allegations are simply not maintainable as a cause of action at all, a challenge that is properly raised by way of a special defense.
Accordingly, the Bank's motion to strike count five of the plaintiff's complaint is denied on this ground as well.
IV. Conclusion
For the reasons stated above, the Bank's motion to strike counts two, three and five of the plaintiff's second amended complaint is denied.
Hendel, J.