[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR DISCHARGE OF MECHANIC'S LIEN
Alstom Power seeks an order of this court discharging the $17,004,142.82 mechanic's lien filed by the defendant Balcke-Durr Inc. (BD or BDI). It asserts that BD waived its right to file a mechanic's lien under the express terms of the contract between the parties. BD asserts, inter alia, that since the agreement was not reached until after October 1, 1999, that the lien waiver language was rendered "void and of no effect" pursuant to 42 C.G.S. 158l (a) which became effective on October 1, 1999.
 I FACTS
A summary of facts and procedural history are as follows. On July 5, 1998, ABB Power Generation, Ltd., the predecessor-in-interest of the plaintiff, Alstom Power Inc., entered into a Long Term Supply Agreement (LTSA) with Balcke-Durr GmbH, the predecessor of the defendant, Balcke-Durr, Inc. The LTSA was in essence an agreement to agree. It set certain standards and parameters relating to the air cooled condensers and other equipment BD was to supply to Alstom for Alstom's use in several power plant construction projects in the United States and other countries. Each individual project would be commenced with a separate purchase order issued by the plaintiff and acknowledged by the defendant.
By the summer of 2000, a number of purchase orders had been issued pursuant to the LTSA and disputes had arisen between the parties. One of these purchase orders was for a project on Lake Road in Killingly, Connecticut (Lake Road). In accordance with the LTSA and a subsequent Memorandum of Agreement, arbitration proceedings concerning the disputes on all projects was commenced under the Arbitration Rules of the Zurich Chamber of Commerce. On February 12, 2002, after the arbitration process commenced, RD recorded a mechanic's lien against the Lake Road property, CT Page 4234 to secure payment for labor, material and services, in the amount of $17,004,142.82. Pursuant to General Statutes § 49-37, the plaintiff then posted a surety bond in the amount of $20,400,000.00, as a substitute for the lien and commenced an application proceeding in this court to either discharge the lien or reduce its amount. The defendant moved to stay the plaintiff's application for discharge based upon pending arbitration, pursuant to General Statutes § 52-409.
The court granted the defendant's motion to stay, in part, and denied it, in part. The court held that the question of the validity of the mechanic's lien is ultimately a decision for the court. The stay was granted with respect to any claims for a reduction of the lien.
The court heard argument on the matter on January 7, 2003. At the hearing, the plaintiff filed additional documentary exhibits and presented a witness, Lambert Kerschbaumer, the plaintiff's purchasing manager.
 II LAW
Pursuant to General Statutes § 49-35b (b), in order for this court to discharge a mechanic's lien, the plaintiff must show, by clear and convincing evidence, that the mechanic's lien is invalid. See Johnson v.De Toledo, 61 Conn. App. 156, 161, 763 A.2d 28 (2000).
Alstom points to the express language of the LTSA as establishing the grounds for the discharge of BD's lien. Section 19.2 of the LTSA provides in relevant part:
to the full extent permissible by local law, [BDI] hereby waives for himself, his successors in interest and assigns, and for all subcontractors, vendors, suppliers, etc., their successors in interest and assigns for all claim or right of lien upon [Alstom's] or theEmployer's property or any part thereof as a result of the furnishing oflabor and/or material under the terms of the Agreement.
(Emphasis added.) (LTSA at p. 17).
The plaintiff produced evidence that BD started work on the Lake Road project prior to October 1, 1999, and was paid for work performed as of September 1, 1999. It claims that therefore, the contract was accepted by BD and was in force and effect prior to the effective date of the Fairness in Construction Financing Act, General Statutes § 42-158i, CT Page 4235 et seq.
The defendant counters the assertions of the plaintiff with a number of defenses. The defendant relies upon the Fairness in Construction Financing Act which provides that as of October 1, 1999:
(A)ny provision in a construction contract or any periodic lien waiver issued pursuant to a construction contract that purports to waive or release the right of a contractor, subcontractor or supplier engaged to perform services, perform labor or furnish materials under the construction contract to (1) claim a mechanic's lien or (2) make a claim against a payment bond, for services, labor or materials which have not yet been performed and paid for shall be void and of no effect.
(Emphasis added.) General Statutes § 42-158l (a).
Importantly, the lien waiver prohibition in the Fairness Act applies to contracts entered into "on or after October 1, 1999," pursuant to General Statutes § 42-158i.[1] BD claims that the agreement between the parties with respect to the Lake Road Project did not come into effect until October 15, 1999 at the very earliest and therefore, the lien waiver language of the LTSA was void and of no effect. It further claimed the flaws in the lien waiver precluded its enforcement. Finally BD renewed its previously rejected argument that the issues of the validity of the lien and lien waiver should be resolved by the pending arbitration.
The parties submitted to the court the LTSA, the Purchase Order for the Lake Road Project dated September 27, 1999, the Purchase Order acknowledgment dated October 15, 1999, and Limited Notices to Proceed (LNTP) dated August 27, 1999 and September 14, 1999. The defendant submitted a "Terms of Payment" memorandum which indicated payment milestones under the contract. The plaintiff submitted a payment invoice from the defendant dated October 12, 1999, requesting payment of 10% of the contract value as Milestone 1 with a notation that "the 45 day payment period started on 9/1/99." The plaintiff also submitted various minutes of the parties' meetings that occurred in August and September of 1999.
In order to ascertain the effective date, the court must determine the dates and interplay of the operative documents that make up the agreement, as a whole. "[The Supreme Court] long [has] held that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that CT Page 4236 the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois GasTransmission System, L.P., 252 Conn. 479, 502, 746 A.2d 1277 (2000). "The parol evidence rule does not . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract." (Internal quotation marks omitted.) HLO Land Ownership A.Ltd. v. Hartford, 248 Conn. 350, 358, 727 A.2d 1260 (1999).
Moreover, where parties are sophisticated, as are Alstom and BD, and enter into carefully crafted commercial contracts from positions of relative equality, without the improper influence of fraud or duress, the court should not "embark on a voyage into uncharted waters in which untrammeled and unrestrained judicial revisionism would depart significantly from an aspect of contract law upon which contracting parties reasonably can be assumed to have relied for many years."Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P., supra,252 Conn. 506.
Applying these principles, the court now turns to the language that the parties themselves have crafted to govern their relationship. Chronologically, the first document before the court that is material, is the LTSA entered into by the parties in July of 1998. The LTSA is an umbrella agreement; a framework which the parties were to use as a guide when embarking upon their various projects throughout the United States and elsewhere. The agreement contained definitions of terms used not only in the LTSA but also in the subsequent documents contemplated by the LTSA. Because the LTSA served as the guide for the parties, the LTSA also serves as a guide for this court to determine the documents that comprise the agreement and the effective date of the Lake Road project.
The following are definitions contained in the LTSA. "`Agreement' shall mean the Long Term Supply Agreement and Purchase Order(s) setting forth the Works, including all Documents incorporated therein by reference." (LTSA p. 6.) "Purchase Order" shall mean the Document issued by [Alstom] and entitled "Order," by which the Agreement come [sic] into effect and force. (LTSA, Definitions, p. 7.) "Acknowledgment" shall mean the SUPPLIER's final acceptance of the Purchase Order(s). (LTSA Definitions p. 6.) CT Page 4237
The LTSA further contemplated the future negotiation of project-specific purchase orders. The LTSA established that each party would bear their own costs in association with preparation of purchase orders. LTSA Section 6.1 provides:
Expenses associated with the preparation of any offer incurred by the SUPPLIER shall be borne by the SUPPLIER and without recourse to [Alstom]. In any event, [Alstom] shall have the right to accept or reject any proposal made by the SUPPLIER in response to [Alstom's] request for quotation without incurring any liability whatever to the SUPPLIER. ThisAgreement shall not imply or create an obligation for both Parties toenter into any Purchase Order. Should [Alstom] accept the SUPPLIER's proposal, such acceptance shall remain conditioned upon [Alstom] and the SUPPLIER executing a Purchase Order on terms to be mutually agreed upon as to price, Normal Delivery Time, scope of Works.
(Emphasis added.)
(LTSA, Section 6.1, p. 10.)
Finally, the LTSA anticipated that there might be inconsistencies between the various documents used by the parties to articulate their agreements on a particular project. It provided the parties, and now the court, with a guide to interpret and enforce their agreements. Section 5 of the LTSA entitled "Priority of Agreement Documents" states in part:
In the event of an inconsistency between the various documents of this Agreement, the inconsistency shall be resolved by giving such documents the following order to precedence (the valid documents shall be stated appropriately in ABB's Order (PO)
(a) The Purchase Order
(b) The project relevant Liquidated Damages Document
(c) This Long Term Supply Agreement . . .
(LTSA, Section 5.1, p. 10.)
Within the context created by the LTSA, Alstom issued to BD its Purchase Order (PO) for the Lake Road Project. The order is dated September 27, 1999. It references a Limited Notice to Proceed that it issued dated September 14, 1999. Consistent with the LTSA, section 5.1, the PO provided in note 1: CT Page 4238
If there is any contradiction between any documents, the order of precedence shall be top down as follows:
— this purchase order and any addendums issued during the execution of the work . . .
— The LTSA dated 07/05/98 . . .
The PO specifically delineated two ways that BD could accept the terms of the PO. It provided that BD "shall return to ABB (Alstom) a PO acknowledgment, duly signed, within ten (10) business days from PO issue date" or alternatively that if Alstom did not receive an acknowledgment as specified "this PO shall be deemed tacitly accepted in full by the supplier." See notes 9 and 10 of the PO at ¶ 2.
BD responded to the PO by its letter dated October 15, 1999. It stated in relevant part, "We hereby acknowledge receipt of the subject Purchase Order. Our acknowledgment and acceptance is contingent upon the following clarifications and exceptions: . . ." More specifically, the BD correspondence addressed notes 9 and 10 of the PO, which delineated the manner in which BD could acknowledge the PO. "While the PO issue date may be 09/27/99, we wish to clarify that the Purchase Order was only received in our office on October 7, 1999. Therefore our acknowledgment on this date of October 15, 1999 is well within the `ten (10) business days' requirement specified herein." There was no testimony offered to refute the time of receipt of the Purchase Order as described in the defendant's October 15, 1999 letter to the plaintiff.
"[T]he basic principle of contract law [is] that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties." (Internal quotation marks omitted.) Lembov. Schlesinger, 15 Conn. App. 150, 154, 543 A.2d 780 (1988). "Acceptance is operative, if transmitted by means which the offeror has authorized, as soon as its transmission begins and it is put out of the offeree's possession . . . irrespective of whether or when it is received by the offeror." Lyon v. Adgraphics, Inc., 14 Conn. App. 252, 255 (1988).
Interpreting the contract documents in accordance with the contract definitions, BD, within 10 business days of its receipt of the purchase order from Alstom, had exercised its right and power to acknowledge and accept the purchase order. The date the agreement between the parties for the Lake Road project came into effect was no earlier than October 15, 1999.
The plaintiff argues that notwithstanding the contract language focused CT Page 4239 on above that the contract was in "force and effect" prior to October 1, 1999. The plaintiff focuses on the conduct of the parties prior to that date such as meetings between the parties, the issuance of contractual notices (LNTPs) and that the defendant had billed the plaintiff under the contract for work performed prior to October 1, 1999.
With regard to the meetings between the parties prior to October 1, 1999, the court cannot attribute to them the effect of creating a binding contract. To do so where the parties have subsequently clearly described the manner in which their agreement would be formed would violate the parol evidence rule. See Tallmadge Bros., Inc. v. Iroquois GasTransmission System, L.P., supra, 252 Conn. 502. With respect to the LNTP, the LTSA is instructive. The only reference to a notice to proceed in the LTSA is found in Section 6.3. This section discusses the issuance of an "NTP" (notice to proceed) in relation to a delivery time schedule. Under this section, the defendant is allotted a maximum delivery time of fourteen months to deliver its supplies and render its services. Under the LTSA, the defendant may be subject to liquidated damages for failure to deliver in accordance with this time schedule. (LTSA p. 11-12.) While the issuance of a LNTP set a clock running for delivery, it could not operate to bind the parties to a contract where the parties subsequently, in writing, describe the manner in which a binding contract was to be formed. Accordingly, the court finds that the issuance of the LNTP on September 14, 1999, was insufficient to constitute an acceptance of the agreement by the defendant. As envisioned by the LTSA, the issuance of the LNTP was meant to commence a delivery time period and not to legally bind the parties. Moreover, the "performance" requested by the LNTP, directed the defendant to commence engineering, design, and procurement of air cooled condensers. This type of activity evidences a gearing up for, or preparation for performance and the parties were not legally bound to the entire agreement by this notice. The request by the defendant for payment for work done after September 1, 1999, and the plaintiff's apparent acquiescence with the request, is a limited act. It may be consistent or inconsistent with a formal contract date of October 15, 1999. While the work done may have given rise to a quasi-contractual theory of recovery, it cannot be a basis for the court to insert itself as a draftsman between these sophisticated parties. See United CoastalIndustries, Inc. v. Clearheart Construction Co., 71 Conn. App. 506, 512,802 A.2d 901 (2002) ("Quantum meruit is usually a remedy based on implied contract and usually relates to the benefit of work, labor or services received by the party who was unjustly enriched . . .").
All of the conduct identified by the plaintiff as supporting contract formation prior to October 1, 1999 was contemplated under the LTSA. The parties were to have a working relationship with the goal of having BD CT Page 4240 serve as a prime source of supply for the construction projects that the plaintiff was planning. The agreement, however, did not make BD an "exclusive" supplier. The LTSA contemplated project by project negotiation and identified the terms of a "purchase offer" as having priority in determining the terms of the contract. The LTSA is quite clear that the agreement, with respect to Lake Road, became binding on the parties upon execution and acknowledgment of the Purchase Order. First, the definition of "Agreement" clearly references the Purchase Order. Second, the definition of "Purchase Order" in the LTSA states that it "shall mean the Document issued by [the plaintiff] and entitled `Order' by which the Agreement come [sic] into effect and force." (LTSA p. 7, [Emphasis added].) Third, the definition of "Acknowledgment" notes that it "shall mean the SUPPLIER's final acceptance of the Purchase Order." Finally, section 6.1 of the LTSA states in relevant part, "[t]his Agreement shall not imply or create an obligation for both Parties to enter into any Purchase Order(s). . . Should [the plaintiff] accept [the defendant's] proposal, such acceptance shall remain conditioned upon [the plaintiff] and [the defendant] executing a Purchase Order on terms mutually agreed upon . . ." Here the Lake Road Purchase Order clearly and explicitly defined the manner in which it could be accepted. The defendant accepted and acknowledged the offer in the clear and express manner authorized by the offer.
It should be noted that because the court has determined that the LNTP is not an operative document with respect to the parties' agreement, the plaintiff's evidence and argument that the conduct of the parties, prior to acknowledgment of the Purchase Order, constituted acceptance of the agreement by the defendant, is unfounded. This evidence of conduct is contrary to the terms of the parties' written agreement. Accordingly, it is inadmissible under the parol evidence rule. See Tallmadge Bros., Inc.v. Iroquois Gas Transmission System, L.P., supra, 252 Conn. 502.
The court finds that the plaintiff has failed to prove, by clear and convincing evidence, that the parties' agreement took effect prior October 1, 1999. The court finds that the agreement between the parties for the Lake Road Project came into force and effect no earlier than October 15, 1999. Per force of General Statutes § 42-158l (a) of Connecticut's Fairness In Construction Financing Act, the lien waiver language contained in section 19.2 of the LTSA is void and of no effect. The plaintiff has, therefore, failed to prove that the agreement is not subject to the lien waiver prohibition in rendering section 19.2 of the LTSA void. Accordingly, the plaintiff's application to discharge the defendant's mechanic's lien is denied.
Cosgrove, J. CT Page 4241