[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a controversy between the purchasers of a home and the real estate brokers who were involved in the sale. In their three count complaint, the plaintiffs, Steven A. Certilman and Terri F. Certilman, seek money damages against the CT Page 10426 defendants Jean Crocco, and Putnam Associates, Ltd., of which Crocco is the owner. The plaintiffs allege in the first count that the defendants tortiously interfered with their contract to purchase the subject premises. In the second and third counts of the complaint, the plaintiffs allege that the defendants' conduct caused them emotional distress and constituted a violation of General Statutes § 42-110b, et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The defendants filed an answer denying the material allegations of the complaint. The defendants, as third-party plaintiffs, impleaded Suzan Rose and her employer, Coldwell Banker Residential Real Estate, Inc. (Coldwell), as third party defendants, alleging that if they were found to be liable to the plaintiffs, they should be indemnified by the third-party defendants.
This case was referred to Attorney Barbara LaVoy, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed her report containing the following findings of fact: (1) that the plaintiffs are both practicing attorneys, the defendant Crocco is a licensed real estate broker with approximately 30 years of experience, and Rose is a licensed real estate salesperson employed by Coldwell, a licensed real estate broker; (2) that the subject premises are located at 111 Hillcrest Park Road in Old Greenwich, and were formerly owned by Lewis Pauker and Judith Pauker; (3) that the Paukers listed their home for sale in May, 1990, with Coldwell, and Rose acted as Coldwell's representative in the transaction; (4) that Pauker obtained a new job with Helene Curtis Corporation (Curtis) and relocated to Chicago; (5) that his new employer agreed to purchase the Paukers' premises in the event that the Paukers could not sell their home within a certain time frame, and that since they were unable to do so, Curtis then paid the Paukers their equity in the premises and retained Coldwell Banker Relocation Management Services (Coldwell Relo) as its agent for sale of the premises; (6) that in July 1990, both the plaintiffs and a Mr. and Mrs. Michaelson, whose broker was Crocco, became interested in the subject premises; (7) that the plaintiffs' offer to purchase the subject premises for $608,000 was accepted by Coldwell Relo on August 8, 1990, in a document entitled "Accepted Offer to Purchase," which, however, contained a contingency clause entitled "mortgage" and, furthermore, that such acceptance was "subject to client approval;" (8) that this CT Page 10427 "Accepted Offer" does not sufficiently describe the property, the owner or set forth a proper mortgage contingency clause as mandated by General Statutes § 49-5b, pertaining to the amount of the mortgage and the term thereof; (9) that very shortly thereafter, Crocco communicated an offer of $615,000 to Coldwell Relo on behalf of her clients, the Michaelsons, with no mortgage contingency clause; (10) that Crocco wanted Rose to communicate this $615,000 offer to Curtis, but after conversing with Rose on the telephone concerning her clients' offer, she was not confident that Rose would communicate the offer to Coldwell Relo, and Rose refused to directly advise Curtis of the Michaelsons' offer;[1] (11) that on August 10, 1990, Crocco called Curtis directly and advised that her clients, the Michaelsons, had bid $615,000, and that she believed the bid was being ignored and not communicated by Rose and Coldwell Relo to Curtis; and (12) Coldwell Relo then advised both brokers, Rose and Crocco, that it would institute a "sealed bid" process, pursuant to which the plaintiffs' bid of $625,000 was ultimately accepted, and the plaintiffs purchased the subject premises on September 14, 1990 for $625,000.
The attorney trial referee concluded as a result of her findings of fact that: (1) the original bid by the plaintiffs of $608,000 was never "approved" or accepted by Curtis, as the owner of the subject premises; (2) in accordance with General Statutes § 52-550(a)(4), there was no written, or binding contract, on which the plaintiffs were entitled to rely; (3) Crocco did not interfere with the plaintiffs' contract with the owner of the subject premises as there was no such contract; (4) Crocco was obliged to communicate the higher offer of $615,000, with no contingencies, to the principal, Curtis, as it constituted information which a principal is entitled to obtain in order to make a rational decision as to a future course of action, citing for this proposition the case of Licari v. Blackwelder, 14 Conn. App. 46,54, 539 A.2d 609, cert. denied, 208 Conn. 803,545 A.2d 1100 (1988);[2] (5) Crocco's conduct was not improper, fraudulent or malicious, nor was it offensive to public policy, immoral or unethical in violation of CUTPA; (6) Crocco's conduct benefitted [benefited] the owner or principal, Curtis, as it obtained a higher sale price, and did not hurt the plaintiffs, who voluntarily agreed to participate in Curtis' sealed bid procedure in their desire to purchase the subject premises; and (6) any "emotional distress" sustained by the plaintiffs was not the fault of the defendants, as the plaintiffs should have realized that they did not have a "deal" until such time as "the seller CT Page 10428 had accepted their offer and the agreement had been memorialized in conformance with the statute of frauds."
The plaintiffs, pursuant to Practice Book § 438, moved to correct the referee's report to reflect that: (1) either the Paukers or Coldwell Relo, not Curtis, was the owner of the subject premises, and the offer to purchase for $608,000, submitted by the plaintiffs, had been accepted by the owners and sellers; (2) Crocco and her agency, the defendant Putnam Associates, Ltd., had tortiously interfered with the contract between the plaintiffs and the owners/sellers, to the detriment of the plaintiffs, who were subsequently forced to pay $625,000, rather than $608,000, to purchase the subject premises; (3) the plaintiffs suffered "emotional distress" because of Crocco contacting Curtis, resulting in the sealed-bid procedure; (4) there was no principal-agent relationship between Curtis, the employer of Mr. Pauker, and Crocco, to justify Crocco contacting Curtis directly, and thus Crocco did not owe any duty to Curtis, but rather only to Coldwell Relo; and (5) the plaintiffs' claim is that Crocco had interfered with a "business expectancy" not with a binding contract between the plaintiffs and Coldwell Relo.
In response to the motion to correct filed by the plaintiffs, the attorney trial referee declined to make any corrections to her report or her recommendation that judgment enter in favor of the defendants and the third-party defendants. The plaintiffs then filed exceptions to the referee's report pursuant to Practice Book § 439, including portions of the trial transcript. The exceptions repeat the contentions set forth by the plaintiffs in their motion to correct, and again claim that the referees' factual findings are against the weight of the evidence. The plaintiffs summed up their position by arguing that "Crocco's efforts in contacting the non-seller, non-principal [Curtis] exceeded the bounds of propriety," and at another point, they claimed that Crocco had gone "outside the normal channel of communication, behind the back of the listing broker and her principal . . . to cause the offer to be disapproved."
As to this court's scope of review of an attorney trial referee's recommendations regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or CT Page 10429 undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440.
In this case, however, the referee's factual findings are not contested. The "accepted offer" of the plaintiffs' bid is in evidence, and there is no question that Crocco did contact Curtis in order to submit a higher bid from her customer. The only issue is whether this conduct warrants a recovery of money damages under the theories advanced by the plaintiff, tortious interference with contract, infliction of emotional distress, or CUTPA. The plaintiffs have not cited any statute or case law that supports their contentions, nor can they point to a provision of either the By-Laws of the Greenwich Board of Realtors, Inc., or the regulations of the Greenwich Multiple Listing Service, Inc. that was violated. Hence, they claim that Crocco's conduct lacked the normal "propriety" expected of a broker. The plaintiffs' assertion that Curtis was not the owner, nor the seller, nor the principal involved in the subject premises ("[i]t is clear that the owner was always either Pauker or [Coldwell Relo]") seems illogical, because, if this were true, Crocco's contacting Curtis would have been inconsequential and immaterial. This was not the case, however, as the plaintiffs agree that this contact by Crocco precipitated a sealed-bid procedure initiated by Curtis. If Curtis played no role in this sale, the company could not have rejected the plaintiffs' first bid of $608,000, and initiated a sealed-bid procedure.
Moreover, the plaintiffs did not file objections to the acceptance of the referee's report, Practice Book § 440, meaning that they have waived any right to claim that the referee's conclusions of fact were not properly reached on the basis of the subordinate facts that were found, or that there were errors in rulings on the admission of evidence or in other rulings. Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301,552 A.2d 827 (1989). In Rostenberg-Doern, where the plaintiff did not file objections to the referee's report, the court said the failure to "follow the appropriate procedural guidelines" resulted in it being "precluded from reviewing [plaintiff's] claim." Id.
In any event, after hearing the evidence, the attorney trial referee found that Crocco had "communicated a higher bid to a CT Page 10430 seller, before the acceptance (by the seller) of another offer," and that there was nothing improper or illegal about such communication. Based on the standard of review in Dills v.Enfield, supra, 210 Conn. 714, the court finds that this conclusion and resulting recommendation that judgment be rendered for the defendants is not illegal or illogical. To the contrary, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, or any other sufficient reason why the report is unacceptable. See Practice Book § 443.
Accordingly, judgment is entered in favor of the defendants, Jean Crocco and Putnam Associates, Ltd., and their third-party suit against Suzan Rose and Coldwell is dismissed as moot.
Statutory costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 6th day of September, 1995.
William B. Lewis, Judge