FREDERICK J. STAEHLE *v.* MICHAEL'S GARAGE, INC., ET AL.
(12833)

LANDAU, SCHALLER and SPEAR, Js.

Argued April 4—decision released August 16, 1994

*Gerald A. Joseloff,* with whom, on the brief, was *Richard W. Gifford,* for the appellant (plaintiff).

*Jack Michael,* pro se, the appellee (defendant), filed a brief.

SCHALLER, J. The plaintiff, Frederick J. Staehle, appeals from the judgment of the trial court awarding him compensatory damages, punitive damages and attorney's fees on counts of conversion and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] The plaintiff claims that the trial court improperly (1) failed to allow attorney's fees for the department of motor vehicles (DMV) administrative hearing, (2) awarded only partial attorney's fees for the CUTPA action, and (3) failed to award sufficient punitive damages. We affirm the judgment of the trial court.

The trial court found the following facts. On or about January 22, 1990, the defendants, Michael's Garage, Inc., and Jack Michael, president and treasurer of Michael's Garage, Inc., through their agents, servants or employees, towed the plaintiff's 1972 Chevrolet pickup truck from a parking lot of the Chestnut Hill apartment complex in Middletown to the defendants' junkyard located at 314 Turkey Hill Road in Haddam. On March 3, 1990, after repeated attempts to have the vehicle returned, the plaintiff filed a complaint against the defendants with the DMV. An administrative hearing was held by the DMV to determine whether the defendants had violated specific licensing provisions

---

[1] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

under General Statutes §§ 14-67m (a)[2] and (b),[3] and 14-67n.[4] The plaintiff sought either party or intervenor status, pursuant to General Statutes § 4-177a. The request was denied as untimely, but the DMV hearing officer indicated that the DMV hearing would not affect the plaintiff's right to bring a civil suit.

The DMV hearing officer concluded that the defendants had violated General Statutes §§ 14-150 (g),[5]

[2] General Statutes § 14-67m (a) provides in pertinent part: "Each motor vehicle junk yard licensee shall maintain a suitable office and keep accurate records of all motor vehicles or major component parts thereof received, dismantled or sold. Such records, vehicles and parts shall be available for inspection during regular business hours by one or more representatives of the department of motor vehicles, the division of state police within the department of public safety or any organized local police department. . . ."

[3] General Statutes § 14-67m (b) provides in pertinent part: "No motor vehicle junk yard licensee may receive a motor vehicle unless the licensee receives the vehicle's certificate of title, if the vehicle is required to have title, or a copy of the vehicle's certificate of title made by an insurance company pursuant to section 14-16c, at the time of receipt of the vehicle. . . ."

[4] General Statutes § 14-67n provides: "No junk yard licensee shall rent or allow or cause to be rented, or operate or allow or cause to be operated for hire, or use or allow or cause to be used for the purpose of conveying passengers or merchandise or freight for hire, any motor vehicle registered under a general distinguishing number or mark. Such plates as are issued to a junk yard licensee may be used in connection with his business for the purpose of towing vehicles to his place of business, for use on the vehicle being towed, for use on commercial vehicles carrying motor vehicles or parts thereof to his place of business for the purpose of dismantling, and for carrying parts of motor vehicles or motor vehicle scrap from such place of business to the place of sale or disposition. The licensee may use such plates for his personal use on vehicles owned by him."

[5] General Statutes § 14-150 (g) provides in pertinent part: "The owner or keeper of any garage or other place where such motor vehicle is stored shall have a lien upon the same for his storage charges. Unless title has already vested in the municipality pursuant to subsection (d), if the current market value of such motor vehicle as determined in good faith by such owner or keeper does not exceed five hundred dollars and such motor vehicle has been stored for a period of not less than fifteen days, such owner or keeper may, unless an application filed by the owner pursuant to subsection (d) of this section is pending and the owner of such motor vehicle has notified such owner or keeper that such application for hearing has been filed, sell the same for storage and towing charges owed thereon, pro-

14-67m (a) and (b), and 14-67n. Pursuant to the DMV's decision, the defendants were required to make restitution to the plaintiff in the amount of $600.[6]

The plaintiff subsequently brought a civil action, alleging conversion and violation of CUTPA. The trial court concluded that the defendants' actions constituted both a conversion and a violation of CUTPA and awarded damages of $2025 plus interest in the amount of $708.55 on the conversion count, and $2025 in punitive damages and $11,250 in attorney's fees on the CUTPA count. The plaintiff appeals from this judgment.

I

The plaintiff first claims that the trial court improperly excluded the work performed by the plaintiff's attorney for the DMV proceeding in the calculation of attorney's fees under General Statutes § 42-110g (d).[7] We do not agree.

---

vided a notice of intent to sell shall be sent to the commissioner and the owner of such motor vehicle, if known, five days before the sale of such vehicle. . . ."

[6] The amount was set at $600 on the basis of the valuation report of Inspector Richard Santoro of the dealers and repairers division of the DMV. This valuation method does not take into consideration the contents of the truck, including three outboard motors and various tools allegedly in the truck's bed when towed.

In the CUTPA action, the trial court valued the items as follows: three outboard motors at $1150, vehicle's cap at $500, four outboard motor gas tanks at $125, tools and a toolbox at $150 and two snow tires at $100. The total fair market value was $2025.

[7] General Statutes § 42-110g (d) provides: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief."

In deciding this issue, we look first to the language of General Statutes § 42-110g (d). In analyzing the statutory language, we employ the standard rules of statutory construction. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic aids,' e.g., the legislative history." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

According to the statute, "the court *may award,* to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney . . . ." (Emphasis added.) General Statutes § 42-110g (d). The use of the word "may" indicates that the statute does not provide a mandatory award of fees to the plaintiff; rather, the court has discretion to award attorney's fees. The language of the statute is clear and unambiguous; the awarding of attorney's fees is within the discretion of the trial court.[8]

---

[8] Although the plain language of the statute is unambiguous, and we need not examine the legislative history, we note that the legislative history plainly supports our conclusion that the legislative intent was that the award of attorney's fees would be in the discretion of the trial court. CUTPA was enacted in 1973. The purpose of the statute was to provide a remedy for consumers who had been victimized by unfair or deceptive trade practices, through both private and public enforcement. R. Langer & D. Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B. J. 388, 389–90 (1980). In 1976, an amendment to the statute was made concerning attorney's fees. Prior to the amendment, the court could award attorney's fees to either party, plaintiff or defendant. The 1976 amendment allowed for the awarding of attorney's fees to the plaintiff only.

During the legislative debate of the 1976 amendment, Representative Alan H. Nevas commented that "[w]hen the initial legislation was enacted, the language provided that if there was litigation, the court, at the end

The cases interpreting the attorney's fees provision of CUTPA also indicate that the awarding of attorney's fees is within the discretion of the trial court. In *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987), our Supreme Court held that "[a]warding . . . attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citations omitted.) See also *Woronecki* v. *Trappe,* 228 Conn. 574, 580–81 n.7, 637 A.2d 783 (1994); *Chrysler Corp.* v. *Maiocco,* 209 Conn. 579, 590, 552 A.2d 1207 (1989); *Ven Nguyen* v. *DaSilva,* 10 Conn. App. 527, 530, 523 A.2d 1369 (1987); *Gill* v. *Petrazzuoli Bros., Inc.,* 10 Conn. App. 22, 32–33, 521 A.2d 212 (1987).

The trial court concluded that the defendants' actions with regard to the plaintiff were in violation of CUTPA. Pursuant to § 42-110g (d), the trial court awarded attorney's fees to the plaintiff in the amount of $11,225, noting that this award did not include the $7626.72 in attorney's fees related to the DMV proceeding. We conclude that the trial court reasonably could have determined that the legal expenses incurred in the DMV proceeding should be excluded from a calculation of attorney's fees under CUTPA. "CUTPA . . . allow[s] attorney's fees only subject to the sound discretion of the court"; *Chrysler Corp.* v. *Maiocco,* supra, 209 Conn.

of that litigation, *could make an award of costs and attorney's fees to either party, depending on the discretion of the court* and in its judgment as to which party should be entitled to such an award." (Emphasis added.) 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2189. Responding to a complaint that the new amendment would be unfairly harsh to businessmen, Senator Louis S. Ciccarello observed, "I think it's fair and I think it should also be pointed out that *reasonable attorney's fees are granted only upon discretion of the court, so therefore, a plaintiff may not be able to receive any fees whatsoever.*" (Emphasis added.) 19 S. Proc., Pt. 6, 1976 Sess., p. 2278. These comments strongly indicate that the intent behind § 42-110g (d) was for an award of attorney's fees to be determined at the discretion of the trial court.

590; and this court will not upset the trial court's judgment without a showing of manifest abuse of discretion or injustice. There being no indication of either in this case, we conclude that it was within the discretion of the trial court to exclude attorney's fees related to the DMV proceeding in its award of attorney's fees under CUTPA.

## II

The plaintiff next claims that the trial court improperly awarded only partial attorney's fees for the CUTPA action.[9] We do not agree.

As noted previously, "[a]warding . . . attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citations omitted.) *Gargano* v. *Heyman,* supra, 203 Conn. 622. The statute contains no standard by which a court is to award attorney's fees, thus leaving it to the sole discretion of the trial court to determine if attorney's fees should be awarded and the amount of such an award.

In *St. Margaret's-McTernan School, Inc.* v. *Thompson,* 31 Conn. App. 594, 627 A.2d 449 (1993), we concluded that an award of $500 in attorney's fees was improper, and directed to the trial court to determine reasonable attorney's fees. The trial court in *St. Margaret's* made no finding that the fees awarded were either reasonable or unreasonable. This case is distinguishable from *St. Margaret's* because, here, the trial court implicitly found that the amount of fees awarded was reasonable.[10] In its memorandum of deci-

[9] The plaintiff requested attorney's fees of $28,468.53. The trial court awarded attorney's fees of $11,250.

[10] Another distinguishing factor is that the *St. Margaret's* case involved a contract that "expressly allowed for 'all attorney's fees and reasonable costs of collection for any outstanding amounts due under this contract.' " *St. Margaret's-McTernan School, Inc.* v. *Thompson,* supra, 31 Conn. App.

sion, the trial court adopted the reasonableness standard contained in General Statutes § 42-110g (d) and thus impliedly found that the attorney's fees awarded were reasonable. This is further demonstrated through the trial court's citation to *Barco Auto Leasing Corp.* v. *House,* 202 Conn. 106, 520 A.2d 162 (1987), for the proposition that a court may award reasonable attorney's fees. We conclude that the trial court did not abuse its discretion in awarding less than the full amount of attorney's fees claimed, on the basis of that court's implied finding that the fees awarded were reasonable.

## III

The plaintiff's final claim is that the trial court abused its discretion in failing to award sufficient punitive damages. We do not agree.

We first analyze the language of the statute.[11] General Statutes § 42-110g (a) provides that "[t]he court *may, in its discretion,* award punitive damages . . . as it deems necessary or proper." (Emphasis added.) The language is clear and unambiguous; the awarding of punitive damages is within the discretion of the trial court.

The standard for awarding punitive damages under CUTPA was established in *Gargano* v. *Heyman,* supra, 203 Conn. 622, where our Supreme Court held that

598–99. This provision of the contract was quoted by this court in its decision to vacate the trial court's award of attorney's fees, and was an additional factor in the decision to vacate.

[11] General Statutes § 42-110g (a) provides: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

punitive damages are available when there is evidence of "a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. . . ."[12] (Citations omitted; internal quotation marks omitted.) Although the statute provides no guidance as to a method for determining the amount of a punitive damages award, several methods have gained acceptance by the courts.

The method used in this case for determining punitive damages was to award an amount equal to the plaintiff's actual damages.[13] This is a recognized method for determining punitive damages under CUTPA. See *Tessmann* v. *Tiger Lee Construction Co.,* 228 Conn. 42, 43, 634 A.2d 870 (1993); *Lembo* v. *Schlesinger,* 15 Conn. App. 150, 153, 543 A.2d 780 (1988). It is not an abuse of discretion to award punitive damages based on a multiple of actual damages. See, e.g., *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 73 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 234–38, 477 A.2d 988 (1984); *Lembo* v. *Schlesinger,* supra, 155–56. We conclude, therefore, that the trial court did not abuse its discretion in awarding punitive damages in an amount equal to actual damages.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] *Gargano* also dictates that the awarding of punitive damages under CUTPA is discretionary. Our Supreme Court found *"[a]warding punitive damages . . . under CUTPA is discretionary . . .* and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citations omitted; emphasis added.) *Gargano* v. *Heyman,* supra, 203 Conn. 622.

[13] The trial court awarded $2025 in actual damages, and used that amount as the award of punitive damages as well.