# MEDVALUSA HEALTH PROGRAMS, INC. *v.* MEMBERWORKS, INC.
## (AC 28124)

Bishop, McLachlan and Robinson, Js.

Argued March 24—officially released July 22, 2008

*Craig S. Taschner*, for the appellant (plaintiff).

*Jeffrey R. Babbin*, with whom were *Katherine Hsu Hagmann* and, on the brief, *Robert M. Langer*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, MedValUSA Health Programs, Inc., appeals from the order of the trial court denying its postjudgment motion for attorney's fees pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] The plaintiff claims that the court abused its discretion. We affirm the judgment of the trial court.

The following facts and procedural history were set forth in *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). "The plaintiff is a Connecticut corporation formed by Andrew Bronfman and Andrew Fineberg to sell discount health care subscriptions for physician, dental, vision, prescription, hearing and other medically-related services to targeted segments of the general public. The defendant [MemberWorks, Inc.] is a Connecticut corporation that provides membership service programs that give consumers access to discounts on a variety of products and services in many areas, including the health care industry.

---

[1] General Statutes § 42-110g (d) provides in relevant part: "[T]he court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

"The parties entered into a contract whereby the plaintiff agreed to become a wholesale, nationwide vendor of one of the defendant's dental and health plans. After they entered into the contract, relations between the parties deteriorated, prompting them to amend their agreement on April 15, 1999. The amended contract delayed the 'start date' of the agreement and reduced the number of service units that the plaintiff was obligated to purchase within eighteen months of the start date. The amendment also changed the defendant's obligations relating to the number and density of physicians participating in the program by supplementing the original provider network (network 1) made available to the plaintiff with a second provider network (network 2), to which the plaintiff would have access when network 1 provided insufficient coverage within a state. The parties' relationship did not improve and, eventually, the plaintiff notified the defendant that it was shutting down its business operations and 'evaluating [its] options with counsel.'

"Subsequently, the plaintiff filed a demand for arbitration with the American Arbitration Association for breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of [CUTPA]. The demand alleged that the defendant had breached the original and amended agreements by: (1) failing to communicate to the plaintiff vital information regarding the provider networks; (2) failing to ensure that the provider networks were sufficient to service the needs of the plaintiff's customers; (3) making misrepresentations about the number and distribution of physicians in network 1 and about the admitting privileges of network 2 physicians to network 1 hospitals; (4) withdrawing the dental network; (5) failing to deliver fulfillment materials; (6) refusing the plaintiff's requests for meetings; and (7) refusing to communicate with the plaintiff other than in writing. The plaintiff further alleged that

the defendant employed these tactics for the purpose of gaining a competitive edge over the plaintiff, and that the defendant began, at a time not specified in the demand, offering to the general public membership programs modeled after that designed by the plaintiff.

"The arbitration panel ruled in favor of the plaintiff on all counts, but awarded no compensatory damages, finding that the plaintiff had failed to establish damages with reasonable certainty. The panel found, however, that, because the defendant had engaged in a number of unfair and deceptive acts in violation of CUTPA, General Statutes § 42-110g (a), the provision within CUTPA providing for the award of punitive damages, justified a punitive damages award of $5 million. The defendant's unfair and deceptive acts, as found by the panel, may be summarized as follows: (1) the failure to disclose to the plaintiff the nature of its communications with network 1, some of which called into question the availability of that network for the plaintiff's enterprise; (2) the failure to disclose to the plaintiff the availability of other networks; (3) a history of misrepresenting its obligations to the plaintiff under the contract; (4) the refusal to meet with the plaintiff in a timely manner and the unavailability of one of its employees for conference calls; (5) the failure to inform the plaintiff about the elimination of free dental services from the program and its inadequate responses to the plaintiff's requests for information, including inquiries concerning the dental services; (6) the failure to provide the plaintiff with new fulfillment materials necessitated by that elimination; (7) the failure to approve in a timely manner hospital lists for advertising; (8) an insistence that all communications with the plaintiff be in writing; and (9) the preparation and distribution of an inaccurate summary of a meeting with the plaintiff. In addition to punitive damages, the panel awarded the plaintiff

$387,794 in attorney's fees and $70,950 in arbitration costs.

"The plaintiff timely applied to the trial court to confirm the arbitration award. Soon thereafter, the defendant moved to vacate the award on three grounds: (1) the award violated Connecticut public policy, embodied in the due process clause of the fourteenth amendment of the constitution of the United States, against excessive punitive damage awards; (2) the award violated the public policy against awarding punitive damages in CUTPA actions in the absence of reckless, intentional or wanton misconduct; and (3) the excessive award evidenced a manifest disregard or patently irrational application of the law in violation of General Statutes § 52-418 (a) (4). The court denied the defendant's motion to vacate and granted the plaintiff's application to confirm the arbitration award. Subsequently, in a separate ruling, the court denied the plaintiff's motion for prejudgment and postjudgment interest." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 637–40.

Both parties appealed from the judgment of the Superior Court. The defendant claimed on appeal that the trial court's confirmation of the arbitration award violated its right to due process under the fourteenth amendment and violated the state's public policy against excessive punitive damage awards. Id., 636, 641. The plaintiff claimed that the court abused its discretion in denying the plaintiff's motion for prejudgment and postjudgment interest. Id., 665. Our Supreme Court affirmed the decision of the trial court. Id., 636–37.

On October 17, 2005, the United States Supreme Court denied the defendant's petition for a writ of certiorari. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). The defendant thereafter paid the award, and

the plaintiff filed a satisfaction of judgment in the trial court on October 25, 2005. Subsequently, the plaintiff filed a motion for attorney's fees in the trial court on November 10, 2005, and its supporting memorandum on July 17, 2006. On September 20, 2006, the court denied the plaintiff's motion. This appeal followed.

The plaintiff claims that the court abused its discretion in denying its motion for attorney's fees. In support of its claim, the plaintiff argues that the public policy underlying CUTPA, to encourage litigants and attorneys to accept and to litigate CUTPA claims, favors an award of attorney's fees in this instance. The plaintiff further argues that the court improperly failed to address the twelve factors for analyzing fee requests under CUTPA set forth in *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 663 A.2d 432 (1995).[2]

---

[2] "In *Johnson* v. *Georgia Highway Express, Inc.*, [488 F.2d 714, 715, 717–19 (5th Cir. 1974)], the question before the Fifth Circuit Court of Appeals concerned the adequacy of attorney's fees awarded by the District Court in an across-the-board action to remedy employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Circuit Court of Appeals set out twelve guidelines for the District Court to consider on remand in setting reasonable attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. . . .

"As under CUTPA, a District Court has discretion under Title VII to award the prevailing party reasonable attorney's fees. . . . Mindful that the purpose of Title VII is to effectuate the congressional policy against racial discrimination . . . the Court of Appeals in *Johnson* noted that the guidelines are an attempt to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. . . .

"The guidelines set forth in *Johnson* for calculating reasonable attorney's fees are appropriate in CUTPA litigation because, similar to Title VII, CUTPA seeks to create a climate in which private litigants help to enforce the ban

In response, the defendant relies on *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 459, 646 A.2d 888 (1994), to assert that the plain language of CUTPA and its legislative history indicate that the award of attorney's fees is not an entitlement, but that it is an award within the court's discretion.[3] The defendant maintains that in the present case, an award of additional attorney's fees is not necessary to uphold the public policy underlying CUTPA because the plaintiff already had been awarded and reimbursed the fees and expenses it incurred during the arbitration and had been compensated amply by the award of punitive damages. The defendant further argues that the factors set forth in *Steiger* govern the calculation of fees, and, therefore, any consideration of these factors must await the court's discretionary decision to award fees. We agree with the defendant.[4]

on unfair or deceptive trade practices or acts. . . . Our review of whether the trial court correctly applied the guidelines and set a reasonable award of attorney's fees is limited to a consideration of whether the court abused its discretion." (Citations omitted; internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 38–39.

[3] "The use of the word 'may' indicates that the statute does not provide a mandatory award of fees to the plaintiff; rather, the court has discretion to award attorney's fees. The language of the statute is clear and unambiguous; the awarding of attorney's fees is within the discretion of the trial court." *Staehle* v. *Michael's Garage, Inc.*, supra, 35 Conn. App. 459.

"During the legislative debate of the 1976 amendment, Representative Alan H. Nevas commented that '[w]hen the initial legislation was enacted, the language provided that if there was litigation, the court, at the end of that litigation, could make an award of costs and attorney's fees to either party, depending on the discretion of the court and in its judgment as to which party should be entitled to such an award.' . . . Responding to a complaint that the new amendment would be unfairly harsh to businessmen, Senator Louis S. Ciccarello observed, 'I think it's fair and I think it should also be pointed out that reasonable attorney's fees are granted only upon discretion of the court, so therefore, a plaintiff may not be able to receive any fees whatsoever.' . . . These comments strongly indicate that the intent behind § 42-110g (d) was for an award of attorney's fees to be determined at the discretion of the trial court." (Citations omitted.) Id., 459–60 n.8.

[4] The defendant urges this court to, alternately, affirm the denial of the motion on the ground that the plaintiff's motion was untimely under Practice Book § 11-21, and, therefore, it must be denied as a matter of law. Because

The following well established legal principles guide our resolution of the plaintiff's appeal. "Awarding . . . attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . [T]he term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Citations omitted; internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 800, 720 A.2d 242 (1998).

In an articulation dated October 24, 2006, the court set forth its reasoning for denying the motion, stating that (1) "[n]one of the defendant's efforts to challenge the award was undertaken frivolously, and it would not further the interests of justice to penalize [the defendant] for seeking a final judicial determination of this issue," (2) the same reasons previously given for denying interest, mainly, that an additional monetary award when there were no compensatory damages would " 'constitute nothing other than additional punitive damages' " and (3) the court was troubled by the timing of the motion, that the "[p]laintiff gave no notice of its intention to seek additional counsel fees until all appeals had been exhausted and until after the defendant satisfied the judgment."

We conclude that the court reasonably could have determined that awarding the plaintiff for attorney's fees it incurred on appeal would not further the interest of justice, given that the plaintiff had been awarded punitive damages, costs and fees at arbitration and that

we conclude that the court did not abuse its discretion in denying the plaintiff's motion, we do not reach this issue.

the defendant had satisfied the judgment. Additionally, we note that the twelve factors set forth in *Steiger* do not govern the issue in the present case. Those factors govern the standard for setting the amount of attorney's fees once a trial court has exercised its decision to award such fees. See *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 36–37. As noted, "CUTPA . . . allow[s] attorney's fees only subject to the sound discretion of the court . . . and this court will not upset the trial court's judgment without a showing of manifest abuse of discretion or injustice." (Citation omitted; internal quotation marks omitted.) *Staehle* v. *Michael's Garage, Inc.*, supra, 35 Conn. App. 460–61. There being no indication of either in this case, we conclude that it was within the discretion of the trial court to deny the plaintiff's motion.

The judgment is affirmed.

In this opinion the other judges concurred.