******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

THOMAS G. STONE III *v.* EAST
COAST SWAPPERS, LLC
(AC 40855)

Alvord, Bright and Norcott, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant motor vehicle
repair shop for violation of the Connecticut Unfair Trade Practices
Act (CUTPA) (§ 42-110a et seq.) in connection with the purchase and
installation of a modified engine in a car owned by K. The plaintiff
had loaned K the money to pay the defendant for the requested work,
however, the engine was never installed because K did not want to pay
for certain additional costs. When K failed to repay the loan, the plaintiff
obtained a judgment against K and secured a lien on K's car, which
remained in the defendant's possession. The plaintiff informed the defen-
dant of his status as a second position lienholder on the car's title and
his claim related to the car. Subsequently, S, a co-owner of the defendant,
sold the car at an auction on the advice of counsel. S provided notice
of the auction to K and the company that had financed K's purchase of
the car, and published notice in a local newspaper, but he did not provide
notice to the plaintiff. In his complaint, the plaintiff alleged that the
defendant had violated CUTPA by refusing to perform the work that
had been paid for and by failing to provide the plaintiff with statutory
notice of the auction. Following a trial, the trial court concluded that
the plaintiff had proven a CUTPA violation and awarded him $8300 in
damages. The court, however, declined to award punitive damages and
attorney's fees, concluding that the plaintiff had not proven the evil
motive or malice necessary to award punitive damages, and that he was
not entitled to attorney's fees. On appeal to this court, the plaintiff
claimed that the trial court erred by failing to award him attorney's
fees. *Held*:

1. The plaintiff could not prevail on his claim that this court should recognize
   a rebuttable presumption in the context of attorney's fees for CUTPA
   violations, whereby the prevailing plaintiff should ordinarily recover
   attorney's fees unless special circumstances would render such an award
   unjust; this court was not persuaded by the plaintiff's arguments in
   support of such a rebuttable presumption and was bound by the plain
   language of the statute (§ 42-110g [d]) that provides for the award of
   attorney's fees under CUTPA and by *Staehle* v. *Michael's Garage, Inc.*
   (35 Conn. App. 455), in which this court held that the language of § 42-
   110g (d) is clear and unambiguous that the decision to award attorney's
   fees is within the sole discretion of the trial court.

2. The trial court did not abuse its discretion in declining to award attorney's
   fees to the plaintiff; contrary to the plaintiff's claim that the trial court
   erred by conflating the analyses for awarding attorney's fees and punitive
   damages, nothing in the court's memorandum of decision or articulation
   suggested that it improperly required the plaintiff to show, in order to
   be entitled to recover attorney's fees, that the defendant acted with
   malice, reckless disregard or evil intent, and, therefore, this court could
   not conclude that there was a manifest abuse of discretion by the trial
   court or that injustice appeared to have been done.

Argued January 31—officially released July 2, 2019

*Procedural History*

Action to recover damages for, inter alia, a violation
of the Connecticut Unfair Trade Practices Act, and for
other relief, brought to the Superior Court in the judicial
district of Hartford, where the court, *Huddleston, J.*,
granted in part the defendant's motion to strike; there-
after, the matter was tried to the court, *Noble, J.*; judg-
ment for the plaintiff, from which the plaintiff appealed

to this court; subsequently, the court, *Noble, J.*, issued an articulation of its decision. *Affirmed.*

*William J. O'Sullivan*, with whom was *Michelle M. Seery*, for the appellant (plaintiff).

*Juri E. Taalman*, with whom, on the brief, was *Joseph R. Serrantino*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Thomas G. Stone III, appeals from the judgment of the trial court, rendered after a trial to the court, finding that the defendant, East Coast Swappers, LLC, had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and awarding the plaintiff compensatory damages, but declining to award punitive damages and attorney's fees. On appeal, the plaintiff claims that the court erred when it failed to award him attorney's fees. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. Patrick Keithan, at the time, the plaintiff's son-in-law, purchased a 2008 Mitsubishi Lancer Evolution in February, 2010, from a dealership in Savannah, Georgia. Keithan was in the military service and stationed in Georgia. He financed the purchase of the car, in part, through a loan from Wachovia Dealer Services, Inc.,[1] in the amount of approximately $24,362.49.

Shortly thereafter, the car's engine experienced performance issues, for reasons not disclosed at trial. Keithan towed the car from Georgia to Windsor Locks, Connecticut, where the defendant, a motor vehicle repair shop, was located. The defendant first replaced the car's turbocharger for $2000, which Keithan paid for by credit card. Following the replacement of the turbocharger, the engine still was found to be inoperable. Keithan returned to Georgia to fulfill his military service obligations and left the car with the defendant.

Keithan ultimately decided that he wanted the defendant to install a Buschur Racing short block.[2] Paul Scott, a co-owner of the defendant, drafted an estimate for this work, which he forwarded to Keithan. The estimate, dated August 17, 2010, referenced the purchase of the Buschur Racing short block and its installation, and estimated a cost of $9028.89.

The plaintiff loaned Keithan $9000 to pay the defendant. The plaintiff's wife prepared a promissory note for the loan, which contemplated the title and car being held by the plaintiff while the note remained unpaid. The note, dated September 14, 2010, was executed by Keithan and his wife, the plaintiff's daughter. Keithan's wife then forwarded a check to the defendant in the amount of $9028.89.

On October 11, 2010, the defendant shipped the car's engine to Buschur Racing, which performed the requested work on the engine and returned the modified engine to the defendant. The modified engine, however, was never installed in the car.[3] As Scott started to prepare the modified engine for installation, his foreman came to him with an additional parts request to discuss with Keithan. These were components that the foreman had learned were damaged as he took the original

engine apart to prepare it for transmittal to Buschur Racing. When this request was communicated to Keithan,[4] he did not want to pay the extra money. The car continued to remain in the defendant's possession.

Keithan never repaid the plaintiff any portion of the loan. The plaintiff first attempted to obtain title to the car to identify him as a second position lienholder by filing a title application with the Motor Vehicle Division of the Georgia Department of Revenue.[5] In February and April, 2011, the plaintiff traveled from Maryland, where he resided, to the defendant's location in Connecticut. Scott refused to allow the plaintiff to look at the car or the modified engine. On September 1, 2011, Victoria L. Abalan, a co-owner of the defendant, sent a letter to Keithan, in which she indicated that she had been contacted by the plaintiff and had received a copy of the plaintiff's title application. The letter from Abalan to Keithan referenced the sum of $14,151.71 being owed to the defendant, which represented the costs of additional shipping, engine parts,[6] and storage over the previous year.

The plaintiff filed an action against Keithan in Maryland and obtained a judgment in the amount of $10,348. This judgment permitted him to eventually secure a lien on the car subsequent in right to that of Wells Fargo Auto Finance (Wells Fargo). See footnote 1 of this opinion. The lien was reflected in a certificate of title, dated June 29, 2012, which was issued by the Georgia Department of Revenue.

On July 13, 2012, the defendant filed a "Notice of Intent to Sell" or an "Artificer's Lien"[7] with the Connecticut Department of Motor Vehicles, which claimed a lien of $1792. In December, 2012, the Connecticut Department of Motor Vehicles issued to the defendant a form H-76, an "Affidavit of Compliance and Ownership Transfer," for use in providing valid title to a purchaser for a vehicle subject to an artificer's lien.

In December, 2012, extensive communications took place between the plaintiff, the plaintiff's wife, and the defendant's owners, regarding the plaintiff obtaining the car in satisfaction of his lien. During these communications, the plaintiff informed the defendant that he had secured status as a second position lienholder on the Georgia title. The plaintiff, however, had not provided the defendant with a copy of the new Georgia title.

Keithan filed for bankruptcy in Maryland and secured the discharge of the plaintiff's judgment. The security interest of Wells Fargo was identified as $10,700 at the time of the bankruptcy petition. The bankruptcy petition, which was obtained by the defendant's counsel, identified the plaintiff as an unsecured creditor.

By June, 2013, both parties had retained counsel who exchanged communications regarding their clients' respective claims related to the vehicle. In September,

2013, the plaintiff commenced the underlying action against the defendant, setting forth a claim of unjust enrichment[8] and alleging that the defendant had violated CUTPA.[9]

On November 9, 2013, Scott, on the advice of his counsel, sold the car at an auction for $19,000. Although he had provided notice to Keithan and Wells Fargo, and published notice in a local newspaper, Scott did not provide notice of the auction to the plaintiff.

In December, 2016, the plaintiff filed the operative single count complaint[10] alleging that the defendant had violated CUTPA by refusing to perform the work that had been paid for, i.e., by failing to install the modified engine in the car and by failing to provide the plaintiff, a lienholder, with statutory notice of the auction. A trial to the court took place on January 24, 25 and 26, 2017.

In its memorandum of decision, the court concluded that "[the plaintiff] has proven a violation of CUTPA,[11] has not proven the evil motive or malice necessary to award punitive damages and exercises its discretion by finding that the plaintiff is not entitled to an award of attorney's fees. Damages are awarded in the amount of $8300."

In declining to award punitive damages and attorney's fees, the court reasoned: "The court finds as a matter of fact that the plaintiff has not proven that [the defendant's] actions constituted a reckless indifference to the rights of [the plaintiff], an intentional and wanton violation of his rights, malice or evil. [The defendant] had been given an application for a title listing [the plaintiff] as a second position lienholder but had never been provided with the actual title. [The defendant] did make the effort to review Keithan's bankruptcy filing, which listed [the plaintiff] as an unsecured creditor. [The defendant] did consult with counsel before selling the vehicle at auction. The court cannot find, therefore, that [the defendant's] actions warrant punitive damages. For similar reasons, the court exercises its discretion and does not award [attorney's] fees to the plaintiff." This appeal followed.

On January 25, 2018, after filing the present appeal, the plaintiff filed a motion for articulation in which he requested that the trial court articulate the factual and legal basis for its decision declining to award attorney's fees. Specifically, the plaintiff requested that the court clarify its use of the phrase "for similar reasons" in its memorandum of decision.[12]

The court issued an articulation on February 15, 2018, in which it stated: "The use of the phrase 'similar reasons' was meant to signify that the court relied on the *same* reasons enumerated in the preceding sentences, to wit, '[the defendant] had been given an application for a title listing [the plaintiff] as a second position lienholder but had never been provided with the actual

title. [The defendant] did make the effort to review Keithan's bankruptcy filing, which listed [the plaintiff] as an unsecured creditor. [The defendant] did consult with counsel before selling the vehicle at auction.'" (Emphasis in original.)

We begin by setting forth the standard of review and legal principles that guide our analysis of the plaintiff's claim. General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court *may* award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable [attorney's] fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." (Emphasis added.)

"Awarding . . . attorney's fees under CUTPA is discretionary; General Statutes § 42–110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . [T]he term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 109 Conn. App. 308, 315, 951 A.2d 26 (2008).

The plaintiff first argues that this court should recognize a rebuttable presumption in the context of attorney's fees for CUTPA violations, whereby the prevailing plaintiff "should ordinarily recover attorney's fees unless special circumstances would render such an award unjust." We decline to recognize such a presumption.

The plaintiff, citing *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn. App. 22, 32, 521 A.2d 212 (1987), argues that this court should recognize such a presumption because "the legislative history [of CUTPA] reflects the force of the legislature's opinion that plaintiff's fees are 'extremely necessary' to make CUTPA an effective mechanism to accomplish its policy to encourage plaintiffs to pursue private-attorney-general actions," and the United States Supreme Court has interpreted a "private-attorney-general discretionary fee-shifting provision" in the context of Title VII cases as creating a rebuttable presumption that attorney's fees should be awarded to the prevailing party. See *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968). The plaintiff also notes that our Supreme Court has applied this presumption in the context of a claim under 42 U.S.C. § 1983. See *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 857, 988 A.2d 229 (2010).

Consequently, he argues: "The rationale supporting

the presumption that the prevailing plaintiff should ordinarily be awarded an attorney's fee [in Title VII cases] applies with equal force to fee awards under CUTPA, given that CUTPA's purpose to encourage private-attorney-general actions is like that of Title VII and similar federal statutes. The rationale is particularly true to Connecticut's legislative understanding and intent that plaintiff's fees are 'extremely necessary,' as a tool for overcoming hesitancy to pursue CUTPA litigation." We are not persuaded.

Title VII protects civil rights, which hold an especially valued status in our law. See *Newman* v. *Piggie Park Enterprises, Inc.*, supra, 390 U.S. 402 (stating that plaintiff who brings civil rights action is "vindicating a policy that Congress considered of the highest priority"). The plaintiff has identified no authority that suggests that any court has ever put protection from unfair trade practices on the same plane. Furthermore, the presumption in favor of an award of prevailing party attorney's fees in Title VII cases has existed since 1968, yet our legislature did not include such a presumption when it first provided for the remedy of attorney's fees in 1973, nor has it amended the statute to incorporate the Title VII presumption over the last forty-five years. Finally, courts review a failure to award attorney's fees to a prevailing party in a Title VII case under a plenary standard. See *New England Estates, LLC* v. *Branford*, supra, 294 Conn. 857. By contrast, our jurisprudence is clear that the decision to award attorney's fees to a prevailing CUTPA plaintiff is reviewed under an abuse of discretion standard. See *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 109 Conn. App. 315.

The plaintiff also contends that recognizing such a presumption is appropriate because "Connecticut courts . . . have imposed judicial guidance on the exercise of discretion in determining the *amount* of fee awards under CUTPA . . . ." (Emphasis in original.) Specifically, the plaintiff points to this court's decision in *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 663 A.2d 432 (1995), which applied a twelve factor test, that had been developed by federal courts for use in Title VII cases, for calculating attorney's fees under CUTPA. The court's initial decision of whether to award attorney's fees, however, is distinct from its subsequent calculation of the award of attorney's fees. We are, therefore, not persuaded.

In *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 461, 646 A.2d 888 (1994), also a CUTPA action, this court concluded that "[§ 42-110g (d)] contains *no standard* by which a court is to award attorney's fees, thus leaving it to the *sole discretion* of the trial court to determine if attorney's fees should be awarded and the amount of such an award." (Emphasis added.)

As this court noted in *Staehle*, the use of the word

"may" in § 42-110g (d) "indicates that the statute does not provide a mandatory award of fees to the plaintiff; rather, the court has the discretion to award attorney's fees. The language of the statute is clear and unambiguous; the awarding of attorney's fees is within the discretion of the trial court." Id., 459.

The rebuttable presumption that the plaintiff contends that we should recognize, whereby a plaintiff "should ordinarily recover attorney's fees unless special circumstances would render such an award unjust," is in conflict with this court's holding in *Staehle* and contrary to the plain language of the statute. With the operation of such a presumption, the trial court would lose its statutory discretion in determining whether to award attorney's fees.

We are bound by this court's decision in *Staehle* and the plain language of the statute.[13] To the extent that the plaintiff's claims raise legitimate policy concerns that warrant a different outcome, it is the role of the legislature, not this court, to address those policy considerations. See *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 549, 979 A.2d 1066 (2009), aff'd, 300 Conn. 1, 12 A.3d 865 (2011).

The plaintiff next argues that, even if this court does not recognize a presumption in the award of attorney's fees under CUTPA, the trial court's failure to assess attorney's fees in this case constituted an abuse of discretion. Specifically, the plaintiff argues that the court erred by conflating the analyses for awarding attorney's fees and punitive damages, thereby improperly requiring the plaintiff to show, in order to be entitled to attorney's fees, that the defendant acted with malice, reckless disregard, or evil intent.[14] We disagree.

In its articulation, the trial court listed the following factual findings to support its decision not to award attorney's fees: "[The defendant] had been given an application for a title listing [the plaintiff] as a second position lienholder but [the defendant] had never been provided with the actual title. [The defendant] did make the effort to review Keithan's bankruptcy filing which listed [the plaintiff] as an unsecured creditor. [The defendant] did consult with counsel before selling the vehicle at auction."

Although the court relied on the same factual findings in its decision not to award punitive damages, nothing in the court's memorandum of decision or articulation suggests that the court improperly required the plaintiff to show, in order to be entitled to recover attorney's fees, that the defendant acted with malice, reckless disregard, or evil intent. We, therefore, cannot conclude that "abuse [of discretion] is manifest or [that] injustice appears to have been done." See *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 109 Conn. App. 315; *Thames River Recycling, Inc.* v. *Gallo*, 50

Conn. App. 767, 800, 720 A.2d 242 (1998). Accordingly, we conclude that the trial court did not abuse its discretion in declining to award attorney's fees to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] It is undisputed that Wells Fargo Auto Finance succeeded in interest to Wachovia Dealer Services, Inc., and that it subsequently acquired the debt.

[2] A short block is a component of an engine upon which other components are assembled. Prior to the plaintiff's request for a Buschur Racing short block, the defendant had provided an estimate for an original equipment manufacturer short block. This estimate contained a waiver of advanced estimate. At trial, the defendant argued that the original equipment manufacturer estimate, containing the waiver and Keithan's signature, constituted authorization to undertake any repair without regard for the statutory requirements. The trial court was not persuaded. See footnote 11 of this opinion.

[3] At trial, Scott testified that, although the $9028.89 estimate stated that it included installation, he intended the word "installation" on the estimate to include the removal of the car's original engine and not the subsequent installation of the modified engine.

[4] The record is unclear as to when the additional parts request was communicated to Keithan.

[5] This was unsuccessful because the title application required the signature of Keithan, which was missing. The plaintiff did, however, subsequently obtain a judgment lien on the car, securing his position as a second position lienholder.

[6] There was no evidence that the defendant actually purchased or installed the additional parts referenced in the letter.

[7] A motor vehicle repair shop may apply to obtain an artificer's lien if it claims a lien on a motor vehicle in its custody upon which it has completed authorized work that is properly recorded on an invoice and if there is no application pending to dissolve the lien within thirty days after completion of the work. See Form H-100A, Connecticut Department of Motor Vehicles, available at https://www.ct.gov/dmv/lib/dmv/20/29/h-100a.pdf (last visited June 26, 2019).

[8] In March, 2014, the defendant moved to strike both counts of the plaintiff's complaint. In September, 2014, the trial court granted the defendant's motion with respect to the plaintiff's unjust enrichment claim.

[9] Specifically, the plaintiff alleged that the defendant had violated General Statutes § 14-65f (a) when it "obtained payment from Keithan, using [the plaintiff's] funds, through the artifice of falsely promising to install a new [e]ngine in the [v]ehicle, and sought to perpetuate this ruse in its communications with [the plaintiff's] agent, by deliberately attempting to pass off a used engine as new."

[10] The plaintiff's second amended complaint is the operative complaint in this matter.

[11] The court found that the defendant violated General Statutes §§ 14-65f and 49-61. Section 14-65f provides in relevant part: "Prior to performing any repair work on a motor vehicle, a motor vehicle repair shop shall obtain a written authorization to perform the work . . . that includes an estimate in writing of the maximum cost to the customer of the parts and labor necessary for the specific job authorized. . . . If the repair shop is unable to estimate the cost of repair because the specific repairs to be performed are not known at the time the vehicle is delivered to the repair shop, the written authorization required by this section need not include an estimate of the maximum cost of parts and labor. In such a case, prior to commencing any repairs, the repair shop shall notify the customer of the work to be performed and the estimated maximum cost to the customer of the necessary parts and labor, obtain the customer's written or oral authorization and record such information on the invoice. . . ." The court found that, although an oral authorization was provided by Keithan with respect to the defendant's estimate for the Buschur Racing short block, the estimate's explicit inclusion of a fixed cost for the "installation" of the modified engine was a misrepresentation on the part of the defendant.

In addition, § 49-61 provides in relevant part: "Within ten days of receipt of such information relative to any lienholder, the bailee shall mail written notice to each lienholder by certified mail, return receipt requested, stating that the motor vehicle is being held by such bailee and has a lien upon it

for repair and storage charges. . . . [I]f the last usual place of abode of the bailor is known to or may reasonably be ascertained by the bailee, *notice of the time and place of sale shall be given by mailing the notice to* him by certified mail, return receipt requested, at least ten days before the time of the sale, and similar notice shall be given to any officer who has placed an attachment on the property and, *if the property is a motor vehicle . . . any lienholder*." (Emphasis added.) The court found that the defendant violated § 49-61 by failing to provide written notice of the auction to the plaintiff. The court concluded that the foregoing conduct, which destroyed the plaintiff's lien, violated CUTPA.

Although, in its brief to this court, the defendant challenges the trial court's determination as to its liability under CUTPA, the defendant did not file a cross appeal. Therefore, this appeal relates solely to the issue of whether the court erred by failing to award attorney's fees to the plaintiff.

[12] In his motion, the plaintiff stated that "[t]he foregoing language suggests, though imprecisely, that the court relied upon the same facts for its decision to decline [attorney's] fees as for its conclusion that the defendant's actions did not warrant [punitive damages]. . . . [I]t is necessary that the trial court clarify . . . whether its decision flowed from the same factual findings that underlie its decision regarding [punitive damages] or whether the court relied on other, similar but as yet unidentified, reasons."

[13] Moreover, we note that the legislature has not amended the language of § 42-110g (d) subsequent to this court's decision in *Staehle* to indicate that it intends attorney's fees to be awarded in a manner other than in accordance with the trial court's discretion.

[14] "In order to award punitive or exemplary damages [under CUTPA], evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 446, 78 A.3d 76 (2013).